**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **HUA HOU,** *et. al.***,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 21-cv-02958** |
| | § | |
| **BERRY APPLEMAN & LEIDEN LLP,** | § | |
| *et. al.* | § | |
| | § | |
| **Defendant.** | § | |

**MEMORANDUM IN SUPPORT OF DEFENDANTS BERRY APPLEMAN & LEIDEN LLP AND CLAUDIA VILLASENOR-SANCHEZ MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO RULE 12(B)(6)**

**TO THE HONORABLE UNITED STATES DISTRICT COURT:**

Defendants BERRY APPLEMAN & LEIDEN LLP and CLAUDIA VILLASENOR-SANCHEZ (collectively, "BAL Defendants"), by and through their attorneys, Wilson Elser LLP, and for their Memorandum in Support of their Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), hereby state as follows:

**INTRODUCTION**

Plaintiffs bring this two-count Complaint against the BAL Defendants alleging legal malpractice and breach of fiduciary duty arising out of the BAL Defendants' efforts to file a petition on behalf of Hua Hou's ("Hou") prospective employer, Stem, Inc. ("Stem"). In short, Plaintiffs contend that the BAL Defendants failed to properly advise them regarding their immigration status, resulting in the Plaintiffs unknowingly accruing unlawful presence in the United States. Plaintiffs' Complaint fails for a number of critical reasons.

First, the Plaintiffs' claims are barred by the statute of limitations. A claim for legal malpractice, or any claim arising out of alleged professional negligence, must be made within two

1

years. The statute of limitations accrues when Plaintiffs knew or should have known of their injury. Here, Plaintiffs admit they knew of their injury by November 16, 2019 and, consequently, their complaint, filed November 24, 2021 is untimely and must be dismissed with prejudice.

Second, the BAL Defendants did not owe any duty to the Plaintiffs to provide information or advice regarding their immigration status. Rather, Stem retained the BAL Defendants to file a petition with the United States Citizenship and Immigration Services ("USCIS") on behalf of Hou to obtain an H-1B visa allowing Hou, a noncitizen, to work for Stem. During the petitioning process, Stem revoked Hou's offer of employment, and the BAL Defendants terminated any relationship with the Plaintiffs, and ceased performing any immigration work on their behalf, a fact of which they were made plainly aware. As such, the Plaintiffs cannot establish the BAL Defendants owed them any duty sufficient to maintain their claims.

Third, Plaintiffs cannot establish the BAL Defendants breached any duty owed to the Plaintiffs. Rather, the allegations of the Complaint establish that any continued efforts by the BAL Defendants to pursue the Petition would not only have been futile, but improper. Without a sponsoring employer, Hou could not have obtained an H-1B Visa, any more than the BAL Defendants could have prosecuted a petition without the support and approval of the petitioner, Stem. Fourth, Plaintiffs cannot show that they would not have been injured – i.e., accrued unlawful presence – "but for" the BAL Defendants actions, in part because the Plaintiffs were in Student (F-1 and F-2) status and as a matter of long-standing Agency policy, unlike most other nonimmigrant classifications, students do not accrue unlawful presence *unless and until* they are found to be in violation of status by an adjudicating officer or immigration judge.[1] Consequently,

---

[1] *See, e.g., Adjudicators Field Manual,* Chapter 40.9.2(b)(1)(E)(ii) ("Example 3: An alien is admitted for 'duration of status' as an F-1 nonimmigrant student. One year later, the alien drops out of school, and remains in the United States for one year after dropping out. The alien's status became unlawful when she dropped out of school. Neither USCIS

Plaintiffs cannot establish the requisite element of proximate cause. Lastly, the breach of fiduciary claim is duplicative of the legal malpractice claim and must be dismissed. Thus, for the reasons stated more fully herein, the Complaint must be dismissed with prejudice.

**ALLEGATIONS IN COMPLAINT[2]**

**I.      STEM RETAINS BAL DEFENDANTS TO FILE H-1B PETITION ON BEHALF OF PROSPECTIVE EMPLOYEE, HOU.**

On or around 2018, Stem, Inc. ("Stem") retained BAL Defendants to file an H-1B Petition for Hou, its prospective employee. (*Id.* at ¶8). To that end, on or around November 19, 2018, BAL filed the H-1B Petition ("Petition") on behalf of the employer sponsor, Stem, for the benefit of the employee-beneficiary, Hou. Additionally, in connection with the Petition filed based on Stem's offer of employment to Hou, BAL Defendants filed an application for a change of status on behalf of Luqin Sun, Hou's dependent, from F1 to H4 dependent of a nonimmigrant worker under the Immigration and Nationality Act ("INA"). (*Id.* at ¶11).

**II.     STEM RESCINDS JOB OFFER AND THE BAL DEFENDANTS CEASE IMMIGRATION WORK ON THEIR BEHALF.**

On March 7, 2019, Stem received a Request for Evidence ("RFE") from the U.S. Citizenship and Immigration Services ("USCIS") related to the Petition. (*Id.*). Shortly thereafter, Stem rescinded the employment offer to Hou. (*Id.* at ¶12.). On April 2, 2019 Stem sent an email to Hou confirming its rescission, stating:

> "This email is to formally confirm the information we discussed by phone earlier today. Unfortunately, Stem finds it necessary to rescind the offer of employment extended to you on October 13, 2018 due to adverse business conditions. ***All Stem activity regarding processing your H1-B visa application to the USCIS must also cease, as will any work by Stem's lawyers (BAL) that would incur additional cost to Stem. Per your request, however, Stem will ask BAL to submit the RFE documents they already have in hand shortly before the May 27th deadline. We***

---

nor an IJ [Immigration Judge] ever makes a finding that the alien was out of status; therefore, she never accrues any unlawful presence for purposes of section 212(a)(9)(B) of the Act.").

[2] By reciting the allegations in the Complaint, BAL Defendants in no way attest to their veracity.

3

*hope this provides you with the additional time you need to find alternative employment*."

*See* the April 2, 2019 email attached hereto as **Exhibit A,** which is referenced in the Complaint at ¶12**³**. (emphasis added).

On May 2, 2019, the USCIS granted the Withdrawal Petition and, because Sun's change in status was entirely contingent upon Hou's H1-B Petition, USCIS "denied" Sun's request for a change in status. (*Id.* at ¶13). Plaintiffs allege that BAL never notified Plaintiffs that the Petition was withdrawn and that Sun's H-4 application was denied. (*Id.*). Further, Plaintiffs allege that BAL failed to forward the USCIS decision on the Petition and H-4 application or respond to emailed requests for information in late May 2019. *Id.*

Plaintiffs contend that the INA section 212(a)(9)(B) and (C) states that "an alien who accrues more than 180 days of unlawful presence in the United States, and then departs, is inadmissible to the United States for a period of either three years or ten years." (*Id.* at ¶15). Allegedly, Plaintiffs began accruing unlawful presence at the time of USCIS's "decision" on May 2, 2019, which they did not learn until BAL informed them on November 27, 2019. (*Id.* at ¶15). Under this theory, Plaintiffs would have accrued 180 days of unlawful presence on October 29, 2019.

## III.    HOU's SUBSEQUENT EMPLOYER'S H-1B PETITION IS DENIED.

On October 18, 2019, Hou received a job offer from Amazon LLC ("Amazon"). (*Id.* at ¶ 16). On or around November 19, 2019, Amazon filed an H-1B petition and change of status for Hou (The "Amazon Petition"). (*Id.*). Plaintiffs *admit* that, at that time, they learned the USCIS

---

³ In considering a motion to dismiss under 12(b)(6), a court may consider the contents of the pleadings including their attachments. Documents attached to a defendant's motion to dismiss is considered part of the pleadings if it is referenced in plaintiff's complaint and is central to her claim. *See, Collins v. Morgan Stanley Dean Witter,* 224 F.3d 496, 498-99 (5th Cir. 2000).

4

would not grant the Amazon Petition while Hou was in the United States because he was "out of status more than 6 months." (*Id.*) Allegedly, Hou was advised by successor counsel that he must return to China and apply for a new Visa in order to reenter the United States. (*Id.*). Another attorney ostensibly informed Plaintiffs that there was a high risk that they could not obtain an H-1B visa from the Beijing Consular Office and would need a waiver to help the Plaintiffs gain a Visa. (*Id.*).

On January 3, 2020, Plaintiffs left the United States with their two children. (*Id.* at ¶18). On January 13, 2020, the Plaintiffs were interviewed for their visa in the Beijing Consular Office. (*Id.*). However, their petitions were "not granted due to more than 6 months of unlawful presence in [the] U.S." (*Id.*). Purportedly, Plaintiffs attempted to apply for a waiver; however, the Consular Officer "did not have enough time to deal with it." (*Id.*). Plaintiffs were never contacted for another interview "because of the Covid-19" pandemic. (*Id.*).

IV.    ***CLAIMS ASSERTED AGAINST BAL DEFENDANTS.***

Based on the foregoing, on November 24, 2021, Plaintiffs filed their two-count Complaint against the BAL Defendants. (*See generally, Id.*). Count I alleges legal malpractice against the BAL Defendants. (*Id.* at p. 6). In support of Count I, Plaintiffs contend an "implied" attorney-client relationship was formed between Hou and the BAL Defendants, and an attorney-client relationship was formed between the BAL Defendants and Sun. (*Id.* at ¶20). The BAL Defendants purportedly breached their duties owed to Hou and Sun by failing to advise them of important developments. (*Id.* at ¶21). Plaintiffs allege that had the BAL Defendants advised Hou and Sun of the "decision timely," they could have gone back to China when Hou received the job offer from Amazon, and they would not have accrued 180 days of unlawful presence. (*Id.*).

5

270695021v.1

In Count II, Plaintiffs allege the BAL defendants owed Plaintiffs a fiduciary duty to act in good faith and in the Plaintiffs' best interests, and had a duty to perform services for plaintiffs with reasonable care and skill. (*Id.* at ¶23). The BAL Defendants purportedly failed to use ordinary care by failing to inform Sun of USCIS's "decision" and by failing to instruct her to take alternative actions to maintain her visa status. (*Id.*).

## LEGAL STANDARD

A district court may dismiss a complaint that "fails to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (U.S. 2009). A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A plaintiff must prove the plausibility of his claim with case-specific facts, not mere conclusions. *Id.* ("A pleading that offers labels and conclusions or a formulaic recitation of the elements of the cause of action will not do"). *Id.* A complaint is insufficient if it tenders "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal,* at 678.

In reviewing a motion to dismiss, the Court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff. *Alexander v. AmeriPro Funding, Inc.*, 848 F.3d 698, 701 (5th Cir. 2017). However, the Court does not apply this presumption to conclusory statements, overt legal conclusions, nor legal conclusions which have been "couched" as factual allegations. *Iqbal*, at 678-79; *Cavazos v. Sussex Ins. Co.*, 2016 WL 6471139, at *3 (S.D. Tex. Nov. 2, 2016).

## ARGUMENT

270695021v.1

I.    **PLAINTIFFS CLAIMS ARE BARRED BY THE STATUTE OF LIMITATIONS (COUNTS I AND II).**

Under Texas law, a claim for legal malpractice, or any claim arising out of alleged professional negligence, must be made within two years. Tex. Civ. Prac. & Rem. Code Ann. § 16.003; Here, Plaintiffs' legal malpractice claim and breach of fiduciary claim are governed by the two year statute of limitations. *Streber v. Hunter,* 14 F. Supp. 3d 978, 985 (W. Dist. Tex. 1998) ("Separating a claim for legal malpractice into claims for negligence, breach of contract, fraud, or other names does not change the underlying facts that the claims in actuality are based on professional negligence and are therefore governed by the two year tort statute of limitations").

For a suit to be timely field under the 2-year statute of limitations, it must be brought within 2 years following the date the cause of action "accrues." *Willis v. Maverick,* 760 S.W.2d 642, 644 (Tex. 1981). The date on which a cause of action for legal malpractice accrues is the date on which the "client sustains a legal injury or, in cases governed by the discovery rule, when the client discovers or should have discovered the facts establishing the elements of a cause of action." *Hughes v. Mahoney & Higgins,* 821 S.W.3d154, 156 (Tex. 1991).

For purposes of a legal malpractice action, a client is not considered to be injured until he or she has suffered an injury. *Smith McKinney,* 792 S.W.2d 740, 742 (Tex. App.--Houston [14th Dist.] 1990). In legal malpractice actions, legal injury is incurred, and a cause of action accrues, when the faulty professional advice is taken. *Erikson v. Renda,* 590 S.W.3d 557, 563 (Tex. 2019). Moreover, "[a] legal injury cannot occur after the attorney/client relationship has ended because the attorney has no duty to the client at that point." *Addicks v. Bilger,* 2005 Tex. App. LEXIS 2498, *11-12 (Tex. App.—Fort Worth 2005).

A.  *Plaintiffs Suffered an Injury At the Latest on May 2, 2019.*

7

Here, Plaintiffs brings this action against the BAL Defendants for its "representation" of the Plaintiffs in connection with its petitions for visa status that purportedly resulted in Plaintiffs accruing unlawful presence in the United States. The BAL Defendants terminated any relationship with the Plaintiffs on April 2, 2019, when Stem rescinded its job offer, and the Plaintiffs' could no longer pursue the Petition. *See, Jinks v. Moppin,* 80 S.W. 390, 393 (Tex. Civ. App. 1904, no writ) (an attorney-client relationship generally terminates upon completion of its purpose). As such, Plaintiffs suffered an injury on April 2, 2019, when the BAL Defendants ceased performing work on the Petition. *See, id*.

Alternatively, Plaintiffs suffered an injury, at the latest, on May 2, 2019 when they purportedly began accruing unlawful presence. Indeed, on that day, the USCIS granted Stem's request to Withdraw the Petition, and denied Sun's change of status application. (¶13). At that time, Sun's F1 status, and, consequently, Hou's F2 status, had expired and, pursuant to the allegations of the Complaint, Plaintiffs allegedly began accruing unlawful presence. (*Id.* at ¶14).

Plaintiffs contend that they could not have known about their injury, *i.e.* that they began accruing unlawful presence as of May 2, 2019, until the BAL Defendants notified Plaintiffs of the Order granting Withdrawal of Hou's Petition, and the "decision" denying Sun's change in status application. (*Id.* at ¶15). However, Plaintiffs misapply the discovery rule and their allegations are insufficient to sustain a cause of action.

The statute of limitations in legal malpractice actions incorporates the discovery rule. *Willis v. Maverick,* 760 S.W.2d 642, 646 (Tex. 1988). Under the discovery rule, the statute of limitations does not begin to run until the injured party discovers or with exercise of reasonable care and diligence should have discovered that a particular injury has occurred. *Id.* However, actual knowledge of the alleged negligence is not necessary to trigger the running of the statute of

limitations. *Timberlake v. A.H. Robins Co.,* 727 F.2d 1363, 1356-66 (5th Cir. 1985). Instead, the statute of limitations begins to run when a plaintiff has knowledge of his or her injury and its cause in fact. *Schuttze v. Springmeyer,* 16 F. Supp. 2d 767, 771 (S.D. Tex. 1998).

Here, Plaintiffs should have known of their injury and that it was wrongfully caused by March 2, 2019. At that time, Plaintiffs had knowledge that:

- Stem rescinded its job offer;
- Stem would no longer be sponsoring Hua's H-1B Petition;
- Sun's application was entirely dependent upon the success of Hou's H-1B visa application;
- Stem and the BAL Defendants ceased performing any immigration work on behalf of the Plaintiffs; and
- their F1 and F2 authorized period of stay had already expired.

Thus, Plaintiffs were apprised with sufficient facts that they should have discovered the Petition was withdrawn and Sun's application was denied before they allegedly began accruing unlawful presence on March 2, 2019. *Nosnik v. Ginsberg & Brusilow, Corp.,* 2000 Tex. App. LEXIS 3730 (June 7, 2000). The details of their immigration status were not inherently undiscoverable, and, therefore, the discovery rule does not toll the statute of limitations. *Id.*

### B. Plaintiffs Had Actual Knowledge of Her Injury, By the Latest, on November 19, 2019.

Even if the discovery rule is applied as Plaintiffs intend, Plaintiffs *admit* they had actual knowledge of the injury, *i.e.* that they began accruing unlawful presence, by November 19, 2019, when USICS denied Amazon's Petition. (*Id.* at ¶ 16). At that time, Plaintiffs learned USCIS would not grant the Amazon Petition while Hou was in the United States because he was out of status more than 6 months. (*Id.*). As such, the statute of limitations began to run – at the latest – on November 19, 2019, and Plaintiff's Complaint, filed November 24, 2021 is untimely and must be dismissed with prejudice. *Hicks v. Rodriguez,* No. 03-08-00040-CV, 2010 Tex. App. LEXIS 1021 (Tex. App.—Austin Feb. 10, 2010, no pet.)(mem. op.).

9

II.   **THE COMPLAINT FAILS TO STATE A CAUSE OF ACTION FOR LEGAL MALPRACTICE AGAINST BAL DEFENDANTS (COUNT I).**

To establish a legal malpractice claim, a plaintiff must plead and prove that: "1) the defendant owed a duty to the plaintiff; 2) the defendant breached that duty; 3) the breach proximately caused the plaintiff injury; and 4) damages resulted." *Simpson v. James*, 903 F.2d 372, 376 (5th Cir. 1990). "In a malpractice action, the Texas Supreme Court has held that an attorney only has a duty to persons in privity with the attorney." *Guardian Underwriters Reassurance Ltd. v. Thompson, Coe, Cousins & Irons, L.L.P.,* 2004 U.S. Dist. LEXIS 862, *7 (N.D. Tex. Jan. 26, 2004). Here, Plaintiff cannot establish duty, breach, or causation and, therefore, the Complaint must be dismissed.

A.   **VISA STATUSES, GENERALLY.**

Prior to analyzing Plaintiffs' claims, it is critical to understand the various immigration statuses at issue in Plaintiffs' Complaint. An F1 visa is issued to international students attending an academic program at a college or university in the United States. F1 visa holders can remain in the United States up to 60 days after the completion of their academic programs. An immediate family member or spouse of an F1 visa holder may receive derivative immigration status under an F2 visa.

By contrast, the H-1B visa program is designed to allow businesses in the United States to temporarily employ foreign workers with specialized expertise on American soil in order to fulfill specific needs of the employer." *United States v. Nanda*, 867 F.3d 522, 525 (5th Cir. 2017). To obtain an H-1B visa:

> an employer must first obtain approval from the U.S. Department of Labor ("DoL") . . . After approval from the DoL, the employer must then file a Petition for a Nonimmigrant Worker ("I-129") with U.S. Citizenship and Immigration Services ("CIS"). After CIS approves the petition, the worker can apply for an H-1B visa at a U.S. consulate or embassy in her home country. Once she obtains the visa, the

10

worker possesses lawful nonimmigrant status and may reside in the United States and work for the sponsoring employer until either the visa expires or her employment with the sponsoring employer is terminated.

*Weng v. United States Citizenship & Immigration Servs.*, 2021 U.S. Dist. LEXIS 254436, *2-3. Stated another way, a beneficiary seeking H-1B status must be sponsored by an employer attesting to the qualifications required of his or her employment. An H-1B visa holder's spouse may receive derivative immigration status under an H-4 visa. *See* 8 C.F.R. § 214.2(h)(9)(iv).

## B. PLAINTIFF FAILS TO PLEAD AND CANNOT PROVE DUTY AND/OR BREACH OF ANY DUTY AS A MATTER OF LAW.

To establish the element of duty, plaintiff must prove that an attorney-client relationship existed. *Guardian,* 2004 U.S. Dist. LEXIS at *7. Moreover, "[t]he nature of the attorney-client relationship defines an attorney's duties and the professional services to be rendered." *Joseph v. State,* 3 S.W.3d 627, 639 (Tex. App.--Houston [14th Dist.] 1999, no pet.); *Joe v. Two Thirty Nine, J.V.,* 145 S.W.3d 150, 160 (Tex. 2004), citing Restatement (Third) of the Law Governing Lawyers, §50, ("a lawyer is not liable for failing to act beyond the scope of representation").

"Generally, a lawyer's fiduciary duties to a client, although extremely important, 'extend [] only to dealings within the scope of the underlying relationship of the parties.'" *Two Thirty Nine,* 3S.W.3d at 159, *citing Rankin v. Naftalis,* 557 S.W.2d 940, 944 (Tex. 1977). "Unless there is some special agreement, once the purpose of the employment is completed, the attorney-client relationship terminates." *Dillard v. Broyles,* 633 S.W.3d 636, 643 (Tex.App.—Corpus Christi, 1982, rit ref'd n.r.e.), *cert. denied*; *Sealed Party v. Sealed Party,* 2006 U.S. Dist. LEXIS 28392, *23 (S.D. Tex. Apr. 28, 2006).

Here, as Plaintiffs' admit, Stem retained the BAL Defendants to file the Petition on its behalf. (ECF 3 at ¶9). The scope of any duty owed by the BAL Defendants is limited to this scope, and terminated upon completion of this purpose. As such, any attorney-client relationship

11

terminated on April 2, 2019, when Stem rescinded the job offer, and its sponsorship of the H-1B Petition. At that time, Plaintiffs were expressly informed that the BAL Defendants would not do any further work on their behalf. Once the relationship terminated, the BAL Defendants no longer owed any duty to the Plaintiffs, including any duty to advise Plaintiffs regarding their immigration status. *Addicks,* 2005 Tex. App. LEXIS 2498 at \*11-12; *Dillard,* 633 S.W.3d at 643; *Flores v. Gonzalez & Assoc. Law Firm,* 2016 Tex. App. LEXIS 10871, \*18 (Tex.App.—Corpus Christi, 2016, no pet.).

The lack of any duty or breach is underscored by the futility of any efforts by the BAL Defendants on behalf of the Plaintiffs to continue pursuit of the Petition. Indeed, to qualify for an H-1B visa, an employer must sponsor the beneficiary's petition and attest to the qualifications required for the job. Once Stem withdrew its employment offer, Hua no longer qualified for an H-1B Petition and, consequently, Sun no longer qualified for an H-4 visa. Therefore, the BAL Defendants did not have any duty to continue to pursue the Petition–indeed, in the absence of a petitioning sponsor, BAL could not have prosecuted the petition solely at the behest of the Plaintiffs. *Dillard,* 633 S.W.3d at 643; *Flores,* 2016 Tex. App. LEXIS 10871 at \*18; *Cathcart v. Scott,* No. 01-10-000952-CV, 2012 Tex. App. LEXIS 8549 (Tex. App.—Houston [1s Dist.] Oct. 11, 2012, no pet.)(mem. op.).

It is often said that the petition belongs to the petitioner. *See* 8 C.F.R. §103.2(a)(3) (stating that in the filing of any immigration benefit, "[a] beneficiary of a petition is not a recognized party in such a proceeding"); and 8 C.F.R. §103.3(a)(1)(iii)(B) (defining "affected party" as "the person or entity with legal standing in a proceeding. It does not include the beneficiary of a visa petition."). In fact, the Code imposes a duty on the BAL Defendants and Stem to advise USCIS of any changes in terms and conditions of employment that may affect the noncitizen's eligibility. *See*, *e.g.,* 8

12

C.F.R. section 214.2(h)(11)(i)(A)(1). ("The petitioner shall immediately notify the Service of any changes in the terms and conditions of employment of a beneficiary which may affect eligibility under section 101(a)(15)(H) of the Act and paragraph (h) of this section."). BAL Defendants could not have pursued the petition without misrepresenting the existence of a job offer that had been withdrawn due to adverse business conditions.

## C. PLAINTIFFS FAIL TO PLEAD AND CANNOT PROVE CAUSATION AS A MATTER OF LAW.

It is not enough to prove a lawyer was negligent; a plaintiff must also prove "a hypothetical alternative: 'What should have happened if the lawyer had not been negligent?'" *Rogers v. Zanetti,* 518 S.W.3d 391, 411 (Tex. 2017). Thus, a plaintiff in a legal malpractice claim must prove that the alleged malpractice was the proximate cause of the injury. *Cosgrove v. Grimes,* 774 S.W.2d 662, 665 (Tex. 1989). To do so, a plaintiff must establish the injury would not have occurred "but for" the alleged breach of duty. *Rogers,* 518 S.W.3d at 403.

### i. *Plaintiffs Did Not Accrue Unlawful Presence*

As a preliminary matter, Plaintiffs did not begin to accrue unlawful presence on May 2, 2019, or at any time at all–the Plaintiffs never accrued unlawful presence because they were last in Student status (F-1 for the principal female plaintiff, Luqin Sun, and F-2 for the dependent male plaintiff, Hua Hou). (Complaint at ¶14).  Consequently, they were last admitted to the U.S. for what is known as "Duration of Status." *See,* 8 C.F.R. §214.2(f)(5)(i) ("[A]n F-1 student is admitted for duration of status. Duration of status is defined as the time during which an F-1 student is pursuing a full course of study at an educational institution approved by the Service for attendance by foreign students…). As described in the *Adjudicators Field Manual,* the "period of authorized stay for a nonimmigrant may end on a specific date or may continue for 'duration of status (D/S)'," as is the case for students by regulation.

13

270695021v.1

For those nonimmigrants admitted until a specific date, they "generally begin to accrue unlawful presence the day following the date the authorized period of admission expires, as noted on Form I-94, Arrival/Departure Record." However, for nonimmigrants admitted for "duration of status," such as F-1/F-2 students (and several other categories), "[i]f USCIS finds a nonimmigrant status violation while adjudicating a request for an immigration benefit, unlawful presence will begin to accrue on the day after the request is denied…It must be emphasized that the accrual of unlawful presence neither begins on the date that a status violation occurs, nor on the day on which removal proceedings are initiated." https://www.uscis.gov/sites/default/files/document/policy-manual-afm/afm40-external.pdf (as visited on April 29, 2022). The critical factor is that the applicant or beneficiary must be found in violation of status during an adjudication of a benefit; in the absence of such a finding, there is no unlawful presence.

In fact, in the May 6, 2009, Memorandum on this exact topic, USCIS evaluated a similar situation to the case at bar involving a noncitizen overstaying an F-1 non-immigrant visa. "Neither USCIS nor an IJ ever makes a finding that the alien was out of status; therefore, she never accrues any unlawful presence for purposes of section 212(a)(9)(B) of the Act." May 6, 2009 *Memorandum regarding Consolidation of Guidance Concerning Unlawful Presence for Purposes of Sections 212(a)(9)(B)(i) and 212(a)(9)(C)(i)(I) of the Act* at p. 10. Here, USCIS never made a finding of fact regarding either Plaintiff being "out of status," since the H-1B petition was simply withdrawn and neither the H-1B nor the related H-4 application were ever formally adjudicated on the merits. As such, neither Plaintiff accrued unlawful presence while in the U.S.—unless such a finding was encompassed within the approval of the Plaintiff's subsequent petition filed by Amazon in the November 2019 decision under successor counsel. In that scenario, the Plaintiffs could have begun to accrue unlawful presence but only as of November 2019, thus, never having

14

270695021v.1

accrued sufficient unlawful presence to subject them to the 3-year bar prior to their abrupt departure in January 2020, on the brink of the global pandemic. 8 U.S.C. §1182(a)(9)(B)(i)(I). Consequently, any damages associated with Plaintiffs' alleged hasty move back to China are not proximately caused by BAL Defendant's withdrawal of Stem's H-1B application. To the extent that Plaintiffs received negligent legal advice as to the accrual of unlawful status from another attorney, that advice cuts the causal chain. *See*, *Russo v. Baxter Healthcare Corp.*, 140 F.3d 6, 10 (1st Dist. 1998) (holding that a subsequent counsel's bad advice produced a harm radically different from the initial attorney's action).

> ii. *Plaintiffs Cannot Establish They Would Not Have Accrued Unlawful Presence "But For" the BAL Defendants' Conduct.*

Even if Plaintiffs could establish they began accruing unlawful presence, to establish causation, a plaintiff must establish the injury would not have occurred "but for" the alleged breach of duty. *Rogers,* 518 S.W.3d at 403.  As discussed *supra,* continued efforts by the BAL Defendants to pursue the Petition would have been both futile and improper. To qualify for an H-1B visa, an employer must sponsor the beneficiary's petition and attest to the existence of a job offer and the qualifications required for the job.

Here, once Stem withdrew its employment offer, Hou no longer qualified for an H-1B Petition and, consequently, Sun no longer qualified for a dependent H-4 visa. Thus, even if the BAL Defendants submitted documents in response to the RFE, Plaintiffs still could not succeed on their H1-B and H-4 Petitions. Stated another way, Plaintiffs' injury – the potential accrual of unlawful presence – would have occurred regardless of any actions taken by the BAL Defendants. Therefore, setting aside the fact that unlawful presence never accrued to begin with, the Plaintiffs cannot establish the requisite "but for" causation.

270695021v.1

iii.    *The Matter Remained Viable After the BAL Defendants Terminated Any Purported Attorney-Client Relationship Severing Causation.*

Moreover, a legal malpractice plaintiff cannot prove proximate causation as a matter of law where the plaintiff's underlying claim remained actionable, or viable, after the defendant attorney's representation ceased. *Medrano v. Reyes,* 902 S.W.2d 176, 178 (Tex. App.—Eastland 1995, no writ). Here, the BAL Defendants terminated their representation on April 2, 2019 – *before* Plaintiffs *purportedly* began accruing unlawful presence on May 2, 2019. Moreover, Plaintiffs even engaged subsequent counsel to file the Amazon Petition *before* October 29, 2019, the date at which, assuming that unlawful presence actually began to accrue, they would have met the 180-day mark for purposes of the 3-year inadmissibility bar.

Stated another way, the BAL Defendants terminated any relationship with the Plaintiffs with ample time for Plaintiffs to investigate and take action prior to accruing unlawful presence, as they allege in their complaint. By April 2, 2019, the Plaintiffs were aware that there was no longer an extant job offer for purposes of attaining H-1B or dependent status; that Stem would no longer continue with the sponsorship necessary for the prosecution of the petition; that Luqin Sun's petition was wholly dependent on the viability of Hua Hou's petition; that BAL Defendants would no longer pursue immigration work on their behalves; and that their F-1/F-2 status had already "expired" as of January 31, 2019, according to the Plaintiffs themselves. Complaint at Paragraph 14. It is hard to imagine what more information the Plaintiffs could have hoped for under the circumstances. As such, Plaintiffs cannot establish proximate cause as a matter of law. *See id.* (defendants cannot be held liable for failing to file an action on behalf of plaintiffs prior to limitations "where the firm properly and timely withdrew and where there was sufficient time for the employment of other counsel").

16

iv.  *BAL's alleged omissions are not a substantial factor of Plaintiffs' alleged damages*

A plaintiff must show cause in fact and foreseeability in order to establish causation in a legal malpractice case. *Harrison v. Taft, Stettinius, & Hollister, L.L.P.*, 381 Fed. Appx. 432, 435 (5th Cir. 2010). "Cause in fact means that the attorney's negligence was a substantial factor in causing the alleged injury. Foreseeability means that the attorney should have anticipated the injury his negligence could cause, although he need not have anticipated the precise consequences of his negligence." *Id.*

Here, as discussed *supra* section C(a)-(b), BAL's alleged conduct was not a substantial factor in causing Plaintiffs' alleged injury. As outlined in the Complaint, most of Plaintiffs' damages stem from a hasty exit from the United States after mistakenly believing that one or both Plaintiffs accrued unlawful status. (*See* ECF 3, ¶17). In the Complaint's Prayer for Relief section, Plaintiffs outline that almost all the damages stem from leaving the United States on a "rush basis," including damages for renting their home for less than market rate and selling two cars. (*See* ECF 3). There was no need to leave on a rush basis.

Assuming for the sake of argument that Plaintiffs did begin to accrue unlawful status pursuant to 8 U.S.C. §1182(a)(9)(B)(i)(I), Plaintiffs had already incurred a 3-year bar to reentry. In accordance with 8 U.S.C. §1182(a)(9)(B)(i)(II), Plaintiffs would only have incurred an additional penalty of a 10-year bar if they did not leave the United States within 1 year. Therefore, assuming Plaintiffs were correct–and they were not–that unlawful presence began in May 2019, Plaintiffs had until May 2020 to leave the U.S. without incurring additional penalties. Plaintiffs' mistake as to (1) their unlawful presence and (2) the need to leave on a rush basis due to the same is the proximate cause of their damages, not BAL defendants' alleged omissions.

270695021v.1

### III.    THE BREACH OF FIDUCIARY DUTY CLAIMS FAIL BECAUSE IT IS DUPLICATIVE OF THE LEGAL MALPRACTICE CLAIM

Plaintiffs cannot maintain a claim under Count II for Breach of Fiduciary Duty, as the claim is duplicative and improperly attempts to fracture the legal malpractice claim. Texas "prohibits 'fracturing' a legal malpractice claim." *In re Cyr*, 2020 U.S. Dist. LEXIS 257924, *10 (W. Dist. 2020). Indeed, "[i]t is well-settled that Texas law "does not permit a plaintiff to divide or fracture her legal malpractice claims into additional causes of action. Regardless of the theory a plaintiff pleads, as long as the crux of the complaint is that the plaintiff's attorney did not provide adequate legal representation, the claim is one for legal malpractice … Such a claim would be improperly 'fractured' from the legal malpractice cause of action. Courts look to the substance of the claims to determine "whether a plaintiff has presented a separate claim, or merely recast and repeated a negligence claim." *Rollo v. Escobedo*, 2021 U.S. Dist. LEXIS 237895, *11 (W. Dist. 2021) (internal citations omitted).

Here, Plaintiffs base their claim for Breach of Fiduciary Duty squarely on the same allegations used to attempt to justify Count I for Legal Malpractice, namely, Plaintiffs incorporate the same allegations from the Complaint itself. (*See* ECF No. 3, ¶22). Although the Complaint does have an additional four paragraphs of allegations under Count II, the allegations all sound in negligence for BAL Defendants' alleged failure to keep Plaintiffs' apprised of their immigration cases. For example, the Complaint alleges that BAL Defendants had a duty to (1) "perform the services for plaintiffs with reasonable care and skill, to act in the plaintiff's highest and best interest at all times," (2) "duty to exercise reasonable care in the representation of both plaintiffs," and (3) BAL and Villasenor-Sanchez "failed to use ordinary care in its representation of Sun in the H4 petition and breached its duty to inform its client of the Decision which was a significant outcome and development with respect to the representation." (*Id.* at ¶¶ 23-25).

18

Count I claims Legal Malpractice based on BAL and Villasenor-Sanchez "failing to keep a client advised of important developments with respect to the representation…" (*Id.* at ¶ 21). The Complaint repackages the exact same allegations for its Breach of Fiduciary Duty claims, that BAL Defendants "breached the duty that it owed to plaintiffs Hou and Sun by failing to inform both of them of a significant outcome. (*Id.* at ¶ 26). Here, Plaintiffs' breach of fiduciary duty claim is based on the same alleged conduct as their legal malpractice claims and the substance of both is indistinguishable. Count II must be dismissed. Moreover, to the extent the Court disagrees, for the reasons discussed above, Plaintiffs fail to plead duty, causation and damages, warranting dismissal.

WHEREFORE, Defendants BERRY APPLEMAN & LEIDEN LLP and CLAUDIA VILLASENOR-SANCHEZ respectfully requests this Court grant its 12(b)(6) Motion to Dismiss Plaintiffs' Complaint.

Respectfully submitted,

By:    */s/ Elvia E. Hague*

Elvia E. Hague
Federal I.D. No. 3242929
Texas Bar No. 24083451
Elvia.Hague@wilsonelser.com
909 Fannin Street, Suite 3300
Houston, TX  77010
Telephone: (713) 353-2039
Facsimile: (713) 785-7780
**ATTORNEY-IN-CHARGE FOR DEFENDANTS BERRY APPLEMAN & LEIDEN LLP AND CLAUDIA VILLASENOR-SANCHEZ**

270695021v.1

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document was forwarded to Plaintiffs via email in accordance with the Federal Rules of Civil Procedure, on this the 3rd day of May, 2022.


Hua Hou
20-1304 Husan Dijing Wan
Yuhang, Hangzhou, China
Hhou2011@outlook.com


*/s/ Elvia E. Hague*
**Elvia E. Hague**

270695021v.1