**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **HUA HOU,** *et. al.*, | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 21-cv-02958** |
| | § | |
| **BERRY APPLEMAN & LEIDEN LLP,** | § | |
| *et. al.* | § | |
| | § | |
| **Defendant.** | § | |

**REPLY IN SUPPORT OF DEFENDANTS BERRY APPLEMAN & LEIDEN LLP AND
CLAUDIA VILLASENOR-SANCHEZ MOTION TO DISMISS PLAINTIFF'S
COMPLAINT PURSUANT TO RULE 12(B)(6)**

**TO THE HONORABLE UNITED STATES DISTRICT COURT:**

Defendants BERRY APPLEMAN & LEIDEN LLP and CLAUDIA VILLASENOR-SANCHEZ (collectively, "BAL Defendants"), by and through their attorneys, Wilson Elser LLP, and for their Reply in Support of their Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), hereby state as follows:

**INTRODUCTION**

Plaintiffs' Response does not cure the defects of the Complaint nor remedy the allegations which demonstrate that Plaintiffs' claims are barred by the statute of limitations. If anything, Plaintiffs' Response only strengthens the argument that they knew or should have known of their alleged injury at or around November 16, 2019, when Hua Hou's new employer, Amazon, was working on a new H1-B application on Hua Hou's behalf. Further, the Response fails to make compelling arguments as to duty. BAL Defendants' termination of any work on behalf of Plaintiffs was **unequivocally** communicated to Plaintiffs, and regardless, any future filings on behalf of Plaintiffs after the withdrawal of the job offer would have been (1) moot and (2) impossible, as the

271810507v.1

information for the RFE had not been sent by Stem, Inc., to BAL Defendants and would not, because the offer was revoked.

Plaintiffs' also fail to remedy the Complaint's failure to properly allege proximate cause. Plaintiffs never were found to be in violation of status, and thus never accrued unlawful presence by operation of the May 2, 2019, Order approving the withdrawal of Stem, Inc.'s H1-B application. Any and all damages flowing from Plaintiffs' misunderstanding of their immigration status were caused by apparently negligent advice from another attorney. Plaintiffs' repeatedly state that the May 2, 2019, Order is conclusive proof of their unlawful status, but Plaintiffs' also acknowledge, by repeatedly quoting the Order, that the "warning" simply stated that Plaintiffs' "may" have started to accrue unlawful status.

Lastly, Plaintiffs have failed to cite to any case law or refute the arguments in the Motion to Dismiss that their breach of fiduciary duty claim is proper. The claim is duplicative and the precedent clearly shows that when the allegations simply mirror the allegations giving rise to the alleged legal malpractice claim, that constitutes and improper "fracturing" of the legal malpractice action. In a clear admission of this fracturing, Plaintiffs' Response cites case law that evaluates an attorney's negligence in failing to keep a client updated in order to prove a supposed breach of fiduciary duty. On the contrary, Plaintiffs are seeking recovery under a breach of fiduciary duty claim for the exact same reason as its legal malpractice claim, namely an alleged failure to send the May 2, 2019, USCIS order to Plaintiffs. Plaintiffs' have attempted to allege claims sounding in negligence and legal malpractice, and without more, the breach of fiduciary duty claim fails.

## ARGUMENT

### 1.  PLAINTIFFS' CLAIMS ARE BARRED BY THE STATUTE OF LIMITATIONS

271810507v.1

In an effort to avoid dismissal, Plaintiffs argue that they did not know about the USICS' decision until November 26, 2019 and, therefore, their Complaint is timely. However, this ignores the remaining allegations in the Complaint and well-established law.

Under the discovery rule, the statute of limitations is tolled only until the "claimant discovers or should have discovered through the exercise of reasonable care and diligence the facts establishing the elements of the cause of action." *GGG Oil v. Baker,* 1999 Tex. App. LEXIS 1172, *3 (Tex.App.–Corpus Christi, 1999) (internal citations omitted). The relevant inquiry, then, is twofold – whether Plaintiffs knew or, through the exercise of reasonable care and diligence, should have known of the facts establishing their cause of action against the BAL Defendants. Here, Plaintiffs knew or reasonably should have know of their injury by May 2, 2019.

In their innuendo-rife opposition, Plaintiffs claim the mantle of "decent citizens" who "won't be willing to overstay their visa even for a second, let alone a few more months." (Opp., p. 10). They claim the injury for which they "are seeking justice" is that they "have been in an unlawful presence for more than 180 days without their realization," a harm that "could lead to 'inadmissible to the United States for a period [of either] three years or ten years." (Opp., p. 3). Plaintiffs claim that even as late as November 2019, they "still have no idea of their visa status." (Opp., p. 5).

They disclaim any knowledge of events despite "repeatedly ask[ing] for the case updates on May 24th, 29th, and 30th, 2019." P.5. And since their putative unlawful presence exceeded 180 days, they claim they "had no choice at that time but to return to China, and to do so on a rush basis" and were then precluded from returning to the U.S. *Complaint, paragraphs 17 and 18.* However, their own email correspondence betrays them and more importantly for purposes of the dismissal motion, they decline to address or respond to the most important issue in the case: the

incontrovertible fact that they simply did not accrue unlawful presence as a matter of USCIS policy because of their unique status as students (F-1/F-2 nonimmigrants).

Firstly, Defendants acknowledge a typographical error in their motion to dismiss, namely, the mistaken reference to March 2 in lieu of May 2, 2019. This inadvertent reference, however, is transparently revealed as a typo from its surrounding context and certainly not a "fabrication" of the facts. Part I(A) of Defendants' Argument, was styled, "Plaintiffs Suffered an Injury At the Latest on May 2, 2019." The motion then made note of the April 2, 2019 email formally rescinding Mr. Hou's job offer and advising that "[a]ll Stem activity regarding processing of your H-1B visa application to the USICS must also cease, as will any work by Stem's lawyers (BAL) that would incur additional cost to Stem."

After taking the position that April 2, 2019 was the point at which the Plaintiffs suffered injury, the motion alternatively stated that, the Plaintiffs suffered injury "at the latest, on May 2, 2019, when they purportedly began accruing unlawful presence." The succeeding paragraph also identifies the date they should have known about their injury as May 2, 2019. Regrettably, on page 9 of its Motion to Dismiss, the Defendants inadvertently typed March 2, 2019, but again, this was clearly a scrivener's error and not any "fabrication" of novel facts. The date of March 2, 2019 appears nowhere else in the brief or the facts.

In their opposition, Plaintiffs acknowledge that upon being "finally" informed of the inevitable withdrawal of Mr. Hou's H-1B petition (following from the absence of a valid job offer), "the whole family attempted to discover the full implications of the Decision but ended up leaving the U.S. expeditiously due to great uncertainty." They did not depart the U.S. because they were subject to a 3-year bar after having accrued more than 180 days of unlawful presence (they disclaim any and all knowledge about their immigration circumstances, after all); they departed the U.S. for

personal reasons, including "great uncertainty," an entirely reasonable response to events unfolding around the globe in January 2020. That they chose not to consult an attorney about their specific circumstances is lamentable, but not attributable to Defendants.

From the moment Plaintiff Hou was advised by Stem on April 2, 2019, that Stem had rescinded the initial job offer, Mr. Hou was made aware that "[a]ll Stem activity regarding processing of [his] H-1B visa application must also cease, as well any work by Stem's lawyers (BAL) that would incur additional cost to Stem." This is in an email provided by the plaintiff and dated Tuesday, April 2, 2019 at 4:46PM.

Plaintiffs then state, "Plaintiff Hou emailed BAL to inquire about his H-1B petition. He reasonably expected BAL defendants to provide legal services, but BAL defendants did not correct that misapprehension". Opp., p. 6. But this does not square with email correspondence submitted by the Plaintiffs themselves. On page 8 of 21 of their filing (Document 15-1), Plaintiffs include an email that is undated in the filing but was in fact sent to Plaintiff Hou on May 30, 2019 at 02:39PM, subsequent to the Plaintiff's multiple emails requesting status. This email leaves no question about the status of his H-1B petition, the ostensible cause of his uncertainty: Stem's VP, Human Resources "remind[ed]" Mr. Hou "that Stem had rescinded our offer of employment due to business conditions. This means that we are no longer pursuing any immigration work on your behalf and we have closed your case with BAL" (*emphasis added*). This seems definitive.

Moreover, that email also copied Defendant Villasenor-Sanchez and BAL support staff, as well. Thus, it would have been a perfect opportunity for Mr. Hou to seek the clarity he now complains was lacking about his status. As earlier stated, Hou claims that even in November 2019, they "still have no idea of their visa status." (Opp., p. 5). Yet, despite this alleged confusion, Mr. Hou could not be bothered to respond to this email, or follow up with any additional questions. It

would seem Plaintiff chose deliberate ignorance because he no longer had a viable job offer or employment opportunity. So, why would Mr. Hou not trouble himself to ask additional questions about his status? It seems likely that he knew that without a job offer, no H-1B petition could be lawfully pursued.

Importantly, it is at this point (May 30) that Mr. Hou ceased all email communications with Defendants and to Defendant's knowledge, Stem. Rather than seek clarity, Mr. Hou embraced the putative ambiguity over his situation and instead, spent the next 6 months searching for a new job offer and new petitioner to file an H-1B petition on his behalf. Indeed, Mr. Hou apparently did not agonize over his immigration circumstances until *after* he received a new job offer on October 18, 2019 from Amazon. *Complaint, paragraph 16.* It was only then, over a month later, that on November 26, 2019, he finally made an appearance and emailed the Defendants.

Despite beginning his email with an acknowledgement that "[a]s you and Stem have notified me, my case has been closed with your firm," he nevertheless "wonder[ed] what the final decision from USCIS is." Opp., p. 11 of 21, email dated November 26, 2019, 9:09AM. What else could it have been in the absence of a bona fide job offer? It is unclear what Mr. Hou expected to happen when his file was closed, all work ceased on his H-1B petition, and he no longer had a legitimate job offer upon which to base any "final decision."

Thus, Plaintiffs should have known of their injury and that it was wrongfully caused by April 2, 2019. At that time, Plaintiffs were apprised with sufficient facts that they should have discovered the Petition was withdrawn and Sun's application was denied before they allegedly began accruing unlawful presence on May 2, 2019. *Nosnik v. Ginsberg & Brusilow, Corp.,* 2000 Tex. App. LEXIS 3730 (June 7, 2000). The details of their immigration status were not inherently undiscoverable, and, therefore, the discovery rule does not toll the statute of limitations. *Id.*

Moreover, the Complaint allegations *admit* that Plaintiffs had actual knowledge of the injury, *i.e.* that they began or potentially began accruing unlawful presence, by November 19, 2019, when USICS granted Amazon's Petition but denied Hou's request for a change of status. (Plaintiffs' complaint alleges "Hou's changing of status was not granted", at ¶ 16). At that time, Plaintiffs learned USCIS would not grant the requested change of status accompanying the Amazon Petition while Hou was in the United States "because he was out of status more than 6 months. (*Id.*). In an attempt to minimize this admission, Plaintiffs proffer new factual allegations in their Response that should be stricken and disregarded by this Court. *See Skidmore Energy, Inc. v. KPMG LLP,* 2004 U.S. Dist. LEXIS 28396, *5 (N.D. Tex. Dec. 28, 2004) ("[I]t is well established . . . that Plaintiffs may not amend their Complaint through briefs submitted in response to [a] motion to dismiss").

## II.    PLAINTIFFS' COMPLAINT FAILS TO ALLEGE DUTY OR BREACH

Plaintiffs' Complaint admits that Stem, Inc., retained BAL Defendants to file a H1-B petition and corresponding change of status petition for Plaintiffs. (ECF 3 at ¶9). The sole purpose of BAL Defendants involvement in this issue was to secure an H-1B visa and accompanying change of status for Luqin Sun based on that sponsoring H-1B visa. Once Stem, Inc., revoked its offer of employment, any further action was futile and Plaintiffs' could not have expected any change of status for either Hua Hou or Luqin Sun to be successful. "Unless there is some special agreement, once the purpose of the employment is completed, the attorney-client relationship terminates." *Dillard v. Broyles*, 633 S.W.3d 636, 643 (Tex.App.—Corpus Christi, 1982, rit ref'd n.r.e.), cert. denied; Sealed Party v. Sealed Party, 2006 U.S. Dist. LEXIS 28392, *23 (S.D. Tex. Apr. 28, 2006).

271810507v.1

Moreover, any attempt to continue pursuing either Plaintiffs' petitions would have required BAL Defendants to fail their duty of candor to the tribunal, namely, USCIS. BAL Defendants had no choice but to withdraw the H-1B application because BAL Defendants knew, and Plaintiffs knew, that there was no sponsoring employer or position. Per this set of facts, Plaintiff Sun's H-4 application was also futile and could not be prosecuted further.

In Response, Plaintiffs' argue that Stem, Inc. "promised" them that BAL Defendants would file the RFE with USCIS. First, Plaintiffs' mischaracterize the nature of that "promise." Stem, Inc., in an email to Plaintiffs, stated only that it would ask BAL Defendants to file the RFE with USCIS. This is hardly a guarantee or promise to take action. Second, Plaintiffs' are alleging reliance on a conditional statement on a third-party to show that BAL Defendants somehow assumed a duty. Plaintiffs' subjective belief that an attorney-client relationship extended past the H-1B petition is unreasonable in light of the revocation of Stem, Inc.'s offer of employment.

Indeed, the course of action Mr. Hou proposed, i.e., that Defendants should continue pursuit of the H-1B petition, amounted to a request that Defendants participate in a sham transaction by continuing with the charade that a valid job offer existed, a necessary prerequisite to the prosecution of an H-1B petition. Under pertinent regulations, a petitioner "shall," among other things, submit a Labor Condition Application (LCA) certified by the Secretary of Labor that it will "comply with the terms of the labor condition application for the duration of the [noncitizen]'s authorized period of stay." 8 C.F.R. §214.2(h)(4)(iii)(B), *et seq.* That LCA is filed under penalty of perjury which states that the signer has not "knowingly furnish[ed] materially false information in the preparation of this form and any supplement thereto or to aid, abet, or counsel another to do so [which] is a federal offense punishable by fines, imprisonment, or both (18 U.S.C. 2, 1001, 1546, 1621)." https://flag.dol.gov/sites/default/files/2019-

271810507v.1

09/ETA_Form_9035.pdf (as visited on June 2, 2022). Those representations include information about the precise position offered, whether it is a full-time position, place of employment, and rate of pay offered to the nonimmigrant worker. The employer is also required to pay the wage in the LCA and must also "pay for non-productive time."

The Form I-129 (H-1B petition), too, contains detailed information about the job offered, wages offered to the nonimmigrant, proposed duties, and that the employer will assume liability for reasonable costs of return transportation of the noncitizen if s/he is dismissed from employment. The petitioner is undertaking a weighty legal obligation and making representations under pain of perjury and criminal penalties by prosecuting the petition with USCIS. Continuing with the prosecution of the petition based on a nonexistent job offer would have imperiled both petitioner, Stem, and Defendants' ethical duty of candor to the tribunal; without a bona fide job offer, the filing would have necessarily contained multiple false statements and representations. Plaintiffs cannot premise their purported injury on Defendant's declination to engage in unlawful, ethically questionable conduct.

Lastly, Plaintiffs also offer a new argument, not contained in the Complaint, that BAL Defendants were negligent because Luqin Sun was not able to appeal the denial of her H-4 Petition. As a preliminary matter, this is not plead and must be disregarded. *See Skidmore Energy, Inc. v. KPMG LLP,* 2004 U.S. Dist. LEXIS 28396, *5 (N.D. Tex. Dec. 28, 2004) ("[I]t is well established . . . that Plaintiffs may not amend their Complaint through briefs submitted in response to [a] motion to dismiss").

In any event, Plaintiffs' avoid addressing or acknowledging that any further action by BAL Defendants, even if there was a continuing attorney-client relationship, would have been futile. Once Stem, Inc., revoked Hoa Hou's offer of employment, the H1-B petition became

unsalvageable and Plaintiff Sun's H-4 Petition, which was dependent on the grant of the H1-B petition, was also always going to be denied. Plaintiffs' argument in the Response that BAL Defendants somehow prevented an appeal of the H-4 petition denial is curious, as it is a legal certainty that no appeal would have been successful.

## III.   PLAINTIFFS FAIL TO SHOW BAL DEFENDANTS ARE THE PROXIMATE CAUSE OF THEIR ALLEGED INJURY

As an initial note, Plaintiffs do not put forward any argument that they began to accrue unlawful status, other than the "warning" boilerplate language that was included in the USCIS Order. Again, that language specifically equivocated, stating that you "may" have started to accrue unlawful status. Still, Plaintiffs' allege that they experienced great uncertainty, which apparently contributed to the hasty flight from the United States, which is a large part of their alleged damages. (*See* Resp. at 10, lines 9-11).

Plaintiffs were both in F nonimmigrant student status and therefore, did not have an I-94 with an expiration on a date certain. This places students outside the statutory construct of unlawful presence, defined as being "present in the United States after the expiration of the period of stay authorized by the Attorney General or is present in the United States without being admitted or paroled." 8 U.S.C. §1182(a)(9)(B)(ii).

It is only when a student is formally deemed to be in the U.S. in violation of their status that unlawful presence begins accruing for them. Here, because the undergirding principal petition was withdrawn– there being no bona fide job offer to support it–the petition was never formally adjudicated on the merits, i.e., factual determinations as to the parties' eligibility for a change of status in accordance with 8 C.F.R. §248.1, et seq. Thus, this "warning" is not at all specific to the Plaintiffs. Indeed, if Plaintiffs truly believed that BAL Defendants were still their attorneys, and

still relying on BAL Defendants for legal advice, Plaintiffs failed to inquire as to the effect of the May 2, 2019, Order.

Even if Plaintiffs' properly alleged, and it was true, that they started to begin to accrue unlawful status, the penalty for accruing 180 days or 364 days is the exact same, pursuant to statute. Thus, Plaintiffs' had plenty of time to take the time to properly determine what their status was, including sending an email to BAL Defendants to inquire as to the effect of the May 2, 2019, Order. Plaintiffs' Response to this argument is indignant, that even if that were true practically, "[a]s decent citizens, Plaintiffs Hou and Sun won't be willing to overstay their visa even for a second, let alone a few more months." (*See* Resp. 10, lines 16-17). Thus, Plaintiffs made a personal choice to leave the United States under their own invented rush, not based on any legal requirements.

Finally, to the extent that Plaintiffs' rely on case law to distinguish or overcome the Complaint's lack of proximate cause, this Court should ignore Plaintiffs' arguments. First, the Response inappropriately attempts to cite case law that evaluates a different proximate cause standard under the Texas Deceptive Trade Practices Act ("DTPA"). (*See* Resp. at 12, lines 3-15). Plaintiffs' Response cites to *Wheaton Van Lines, Inc. v. Mason*, 925 S.W.2d 722, 728 (Tex.App.—Fort Worth 1996, writ denied) for the proposition that a producing cause lacks the foreseeability element that is contemplated in the proximate cause standard. (*See* Resp. at 12, lines 9-12). Although this is completely irrelevant to the matter at hand, as the Complaint only alleges claims of Legal Malpractice and Breach of Fiduciary Duty, it is telling that Plaintiffs' attempt to cite to a different proximate cause standard in order to defend the allegations in the Complaint.

If Plaintiffs inquired as to their status, they would of found what is still true today, that they did not begin to accrue unlawful status after the May 2, 2019, Order. Instead, either through the

negligent advice of another attorney or their own misreading of the May 2, 2019, Order, they believed they had accrued unlawful status and left the country in a hurry. Then, due to the COVID-19 pandemic, Plaintiffs found themselves unable to return amid a massive backlog of immigration related procedures, closed consular offices, and closed borders. The Complaint fails to allege facts to show that BAL Defendants were the proximate cause of Plaintiffs' claimed damages.

IV. **PLAINTIFFS' RESPONSE FAILS TO SHOW HOW COUNT II IS NOT AN IMPROPER FRACTURING OF COUNT I.**

Plaintiffs' fail to even address the case law cited in the Motion to Dismiss that stands for the proposition that a claim for a breach of fiduciary duty is an attempt to improperly fracture a legal malpractice claim when the claims are based upon the inadequate legal representation. "It is well-settled that Texas law "does not permit a plaintiff to divide or fracture her legal malpractice claims into additional causes of action. Regardless of the theory a plaintiff pleads, as long as the crux of the complaint is that the plaintiff's attorney did not provide adequate legal representation, the claim is one for legal malpractice … Such a claim would be improperly 'fractured' from the legal malpractice cause of action. Courts look to the substance of the claims to determine "whether a plaintiff has presented a separate claim, or merely recast and repeated a negligence claim." *Rollo v. Escobedo*, 2021 U.S. Dist. LEXIS 237895, *11 (W. Dist. 2021) (internal citations omitted).

Rather, the Response repackages its allegations that BAL Defendants were negligent in failing to provide Plaintiffs' updates on their immigration status and the May 2, 2019, Order. (*See* Resp. 13, lines 5-7). In fact, the Response continues to frame BAL Defendants' alleged behavior as a failure to use ordinary care in its representation of Plaintiffs. (*Id.* at lines 8-9). The substance of the allegations purporting to support an allegation of legal malpractice (Count I) and breach of fiduciary duty (Count II) are not only similar, but the same. Count II must be dismissed.

WHEREFORE, Defendants BERRY APPLEMAN & LEIDEN LLP and CLAUDIA VILLASENOR-SANCHEZ respectfully requests that this Court grant its 12(b)(6) Motion to Dismiss Plaintiffs' Complaint.

Respectfully submitted,

By:   */s/ Elvia E. Hague*

Elvia E. Hague
Federal I.D. No. 3242929
Texas Bar No. 24083451
Elvia.Hague@wilsonelser.com
909 Fannin Street, Suite 3300
Houston, TX  77010
Telephone: (713) 353-2039
Facsimile: (713) 785-7780
**ATTORNEY-IN-CHARGE FOR DEFENDANTS BERRY APPLEMAN & LEIDEN LLP AND CLAUDIA VILLASENOR-SANCHEZ**

271810507v.1

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document was forwarded to Plaintiffs via email in accordance with the Federal Rules of Civil Procedure, on this the 6th day of June, 2022.


Hua Hou
20-1304 Husan Dijing Wan
Yuhang, Hangzhou, China
Hhou2011@outlook.com



                                                            */s/ Elvia E. Hague*

**Elvia E. Hague**

271810507v.1