IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| HUA HOU and LUQIN SUN, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | Civil Action No. 3:21-CV-2958-D |
| | § | |
| BERRY APPLEMAN & LEIDEN, | § | |
| LLP and CLAUDIA | § | |
| VILLASENOR-SANCHEZ, | § | |
| | § | |
| Defendants. | § | |

MEMORANDUM OPINION
AND ORDER

*Pro se* plaintiffs Hua Hou ("Hou") and Luqin Sun ("Sun") (collectively, "plaintiffs,"

unless the context indicates otherwise) sue defendants Berry Appleman & Leiden, LLP

("BAL") and Claudia Villasenor-Sanchez, Esquire (collectively, "defendants," unless the

context indicates otherwise), alleging claims for legal malpractice and breach of fiduciary

duty in connection with immigration-law services.  Defendants move under Fed. R. Civ. P.

12(b)(6) to dismiss plaintiffs' action for failure to state a claim on which relief can be

granted.  For the reasons that follow, the court grants defendants' motion in part and denies

it in part and grants plaintiffs leave to replead.

I

In 2018 Stem, Inc. ("Stem") retained BAL to file an H-1B[1] visa petition for Hou,

---

[1]An H-1B visa is "an employer-sponsored non-immigrant visa allowing temporary residence for specialty workers and requiring renewal after three years."  *Guimaraes v. SuperValu, Inc.*, 674 F.3d 962, 968 (8th Cir. 2012).

Stem's prospective employee.[2]  Defendants also filed an application for change of status on

behalf of Sun, Hou's wife and dependent, seeking to change her status from F-1 (student) to

H-4 (dependent of an H-1B visa holder).  Plaintiffs allege that these actions created an

implied attorney-client relationship between BAL and Hou, and an attorney-client

relationship between BAL and Sun.

Stem later received a Request for Evidence ("RFE") from U.S. Citizenship and

Immigration Services ("USCIS") related to Hou's H-1B visa petition.  But on April 2, 2019,

before the RFE and H-1B petition were completed, Stem rescinded its job offer to Hou due

to adverse business conditions.  In an email,[3] Stem stated:

> [a]ll Stem activity regarding processing of your H1-B visa
> application to the USCIS must also cease, as will any work by
> Stem's lawyers (BAL) that would incur additional cost to Stem.
> Per your request, however, Stem will ask BAL to submit the
> RFE documents they already have in hand shortly before the
> May 27th deadline.  We hope this provides you with the
> additional time you need to find alternative employment.

---

[2]In deciding defendants' Rule 12(b)(6) motion to dismiss, the court construes the
complaint in the light most favorable to plaintiffs, accepts as true all well-pleaded factual
allegations, and draws all reasonable inferences in their favor.  *See, e.g.*, *Lovick v. Ritemoney
Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004).

[3]The court is considering this email because it is attached to defendants' motion to
dismiss, referenced by plaintiffs' complaint, and central to plaintiffs' legal malpractice claim.
*See Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010)
("The court's review [of a Rule 12(b)(6) motion] is limited to the complaint, any documents
attached to the complaint, and any documents attached to the motion to dismiss that are
central to the claim and referenced by the complaint.").  The court, however, is not including
in its review the documents attached to plaintiffs' response brief.

Ds. Br., Ex. A at 1.[4]

On May 2, 2019 BAL received notice from USCIS that Hou's H-1B petition was withdrawn and that Sun's H-4 change of status application was denied. But BAL did not notify plaintiffs of these USCIS decisions, despite the fact that Hou sent emails inquiring about the status of the case on May 27, 29, and 30, 2019. Plaintiffs allege that defendants' failure to inform them about the withdrawal and denial of their petitions caused them to begin accruing time in an unlawful immigration status,[5] without their knowledge, on May 2, 2019.

In October 2019 Hou received a job offer from Amazon LLC ("Amazon"). On November 19, 2019 Amazon filed an H-1B petition and a change of status application on Hou's behalf. Although Hou received an H-1B approval notice, his change of status

---

[4]The court is citing the record this way because neither defendants nor plaintiffs submitted an appendix and cited the appendix, as the local civil rules require. Under N.D. Tex. Civ. R. 7.1(i)(1), "[a] party who relies on materials—including depositions, documents, electronically stored information, affidavits, declarations, stipulations, admissions, interrogatory answers, or other materials—to support or oppose a motion must include the materials in an appendix." Under Rule 7.2(e), "[i]f a party's motion or response is accompanied by an appendix, the party's brief must include citations to each page of the appendix that supports each assertion that the party makes concerning any documentary or non-documentary materials on which the party relies to support or oppose the motion." Thus, because the parties both rely on emails that they submitted as exhibits, the parties should have included a copy of the emails that they reference in their briefs in an appendix and properly cited the appendix in their briefs. Because this deficiency has not interfered with the decisional process of the court, however, the court has disregarded this procedural error in deciding defendants' motion.

[5]This is significant because the accrual of time out of a lawful immigration status can impact an immigrant's eligibility for adjustment of status under 8 U.S.C. § 1255(a). Under 8 U.S.C. § 1255(k)(2), immigrants can only apply for an adjustment status if they, *inter alia*, "ha[ve] not, for an aggregate period exceeding 180 days—(A) failed to maintain, continuously, a lawful status . . . ."

- 3 -

application was denied because he had been out of lawful immigration status for six months. According to plaintiffs, because of the amount of time Hou had been out of status, he was required to return to China and apply for a new visa in order to reenter the United States. Consequently, plaintiffs departed the United States on January 3, 2020.

On January 13, 2020 plaintiffs interviewed for their new visas in the Beijing Consular Office. They were not granted visas, however, because they had accrued more than six months of unlawful presence in the United States. Plaintiffs attempted to apply for a waiver, but "the consular did not have enough time to deal with it." Compl. ¶ 18. And plaintiffs were not called in for another interview due to the COVID-19 pandemic.

On November 24, 2021 plaintiffs filed this lawsuit, alleging that defendants committed legal malpractice and breached their fiduciary duty to plaintiffs by failing to notify them about USCIS's May 2, 2019 decisions withdrawing Hou's H-1B petition and denying Sun's application for change of status. Plaintiffs also allege that defendants' omission caused them to accumulate more than 180 days out of lawful immigration status in the United States. Defendants move to dismiss plaintiffs' action under Rule 12(b)(6). Plaintiffs oppose the motion. The court is deciding the motion on the briefs.

II

In deciding a Rule 12(b)(6) motion to dismiss, the court evaluates the sufficiency of plaintiffs' complaint by "accept[ing] 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464,

467 (5th Cir. 2004)).  To survive defendants' Rule 12(b)(6) motions to dismiss, plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level . . . .").  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'"  *Iqbal*, 556 U.S. at 679 (alteration omitted) (quoting Rule 8(a)(2)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.* at 678.  But because plaintiffs are proceeding *pro se*, the court construes the allegations of the complaint liberally.  *See Hughes v. Rowe*, 449 U.S. 5, 9-10 (1980) (per curiam); *SEC v. AMX, Int'l, Inc.*, 7 F.3d 71, 75 (5th Cir. 1993) (per curiam).

III

The court begins with defendants' contention that plaintiffs' legal malpractice claim should be dismissed because it is time-barred.

A

Defendants maintain that plaintiffs' legal malpractice claim is barred by the statute

of limitations because plaintiffs should have discovered, through the exercise of reasonable diligence, that they suffered an injury, at the latest, on May 2, 2019. Defendants posit that plaintiffs has sufficient facts to discover that Hou's H-1B petition would be withdrawn and that Sun's change of status application would be denied. Alternatively, defendants assert that plaintiffs had actual knowledge of the injury by November 19, 2019. Either way, defendants contend that plaintiffs' complaint—which was filed on November 24, 2021—is untimely and must be dismissed. Plaintiffs respond, *inter alia*, that their complaint is timely because they did not learn about USCIS's May 2, 2019 decisions until November 26, 2019.[6]

B

Limitations is an affirmative defense. *See* Rule 8(c)(1). To obtain a Rule 12(b)(6) dismissal based on an affirmative defense, the "successful affirmative defense [must] appear[] clearly on the face of the pleadings." *Sivertson v. Clinton*, 2011 WL 4100958, at *2 (N.D. Tex. Sept.14, 2011) (Fitzwater, C.J.) (quoting *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986)). In other words, defendants are not entitled to dismissal under Rule 12(b)(6) unless plaintiffs have "pleaded [themselves] out of court by admitting to all of the elements of the defense." *Cochran v. Astrue*, 2011 WL 5604024, at *1 (N.D. Tex. Nov. 17, 2011) (Fitzwater, C.J.) (quoting *Sivertson*, 2011 WL 4100958, at *3).

In Texas, "[t]he statute of limitations for legal malpractice is two years after a cause

---

[6]In their response brief plaintiffs aver that they did not learn about the USCIS decisions until November 26, 2019, but in their complaint, plaintiffs allege that they learned about the USCIS decisions on November 27, 2019. This difference of one day, however, does not impact the court's analysis.

- 6 -

of action accrues." *Erikson v. Renda*, 590 S.W.3d 557, 563 (Tex. 2019); *see* Tex. Civ. Prac. & Rem. Code Ann. § 16.003(a) (West 2017).  Under Texas law, the "discovery rule" applies to legal malpractice claims and "operates to defer accrual of a cause of action until a plaintiff discovers or, through the exercise of reasonable care and diligence, should discover the 'nature of his injury.'" *Childs v. Haussecker*, 974 S.W.2d 31, 40 (Tex. 1998); *see Erikson*, 590 S.W.3d at 563 (applying discovery rule to legal malpractice claim).  By adopting the discovery rule for legal malpractice claims, the Supreme Court of Texas has "accepted that such claims are inherently undiscoverable because '[i]t is unrealistic to expect a layman client to have sufficient legal acumen to perceive an injury at the time of the negligent act or omission of his attorney.'"  *Erikson*, 590 S.W.3d at 563 (alteration in original) (internal quotation marks omitted) (quoting *Willis v. Maverick*, 760 S.W.2d 642, 645 (Tex. 1988)). "The discovery rule need not be specifically pleaded in federal court.  '[U]nder Rule 8 of the Federal Rules of Civil Procedure, it is enough that the plaintiff plead sufficient facts to put the defense on notice of the theories on which the complaint is based.'" *TIG Ins. Co. v. Aon Re, Inc.*, 521 F.3d 351, 357 (5th Cir. 2008) (alteration in original) (footnote omitted) (quoting *Wellborn v. Sears, Roebuck & Co.*, 970 F.2d 1420, 1425 (5th Cir. 1992)).

C

Defendants cannot obtain a dismissal at the Rule 12(b)(6) stage based on the statute of limitations affirmative defense.  This is because plaintiffs have adequately raised the discovery rule and, considering only the facts in plaintiffs' complaint, it is not sufficiently clear that plaintiffs knew or should have known before November 27, 2019 that they had

suffered an injury.  Plaintiffs allege that they were notified in an email from Stem to Hou on April 2, 2019 that Stem had withdrawn its offer of employment; Stem stated in the email that it would ask BAL to submit the remaining RFE documents to USCIS on Hou's behalf in order to give Hou more time to find new employment; Hou subsequently emailed Stem three times asking about his visa status and received no response; Amazon submitted a new H-1B petition and associated change of status application for Hou on November 19, 2019; and plaintiffs learned about USCIS's May 2, 2019 decisions on November 27, 2019.  Contrary to defendants' assertion, plaintiffs do not plead that they learned of USCIS's May 2, 2019 decisions on November 19, 2019; instead, plaintiffs allege that Amazon filed Hou's H-1B petition and change of status application on November 19, 2019, and that the change of status application was later denied—on an unspecified date—because Hou was already out of status for six months.

Considering the facts plaintiffs have pleaded, the court is unable to conclude that defendants' limitations defense appears clearly on the face of plaintiffs' complaint, i.e., that plaintiffs have pleaded themselves out of court by admitting to all of the elements of the defense.  The court therefore holds that defendants are not entitled to dismissal of plaintiffs' action at the Rule 12(b)(6) stage based on the affirmative defense of limitations.[7]

---

[7]The court suggests no view on whether defendants can or cannot prevail on a limitations defense at another stage of this case, such as on motion for summary judgment.

IV

The court turns next to defendants' contention that plaintiffs' legal malpractice claim must be dismissed for failure to plausibly plead a breach of defendants' duties, and to plausibly plead causation.

A

"Attorneys owe their clients the duty to act with ordinary care—i.e., in a manner consistent with the standard of care that would be expected to be exercised by a reasonably prudent attorney." *Beck v. L. Offs. of Edwin J. (Ted) Terry, Jr., P.C.*, 284 S.W.3d 416, 426 (Tex. App. 2009, no pet.). Complaints that an attorney failed to meet this duty of ordinary care sound in negligence. *See, e.g.*, *id.* ("Complaints about an attorney's care, skill, or diligence in representing a client implicate this duty of ordinary care and sound in negligence."); *Cosgrove v. Grimes*, 774 S.W.2d 662, 664 (Tex. 1989) ("An attorney malpractice action in Texas is based on negligence."). To establish a claim for legal malpractice, a client-plaintiff must demonstrate that "(1) the lawyer owed a duty of care to the client; (2) the lawyer breached that duty; and (3) the lawyer's breach proximately caused damage to the client." *Rogers v. Zanetti*, 518 S.W.3d 394, 400 (Tex. 2017).

B

1

Defendants first maintain that, because they were retained by Stem to file Hou's H-1B petition, any duty they owed to plaintiffs is limited in scope to the H-1B petition and any duty owed to plaintiffs terminated upon completion of this purpose. Defendants therefore

- 9 -

contend that, because the omission of which plaintiffs complain occurred after Stem's April 2, 2019 email withdrawing its offer of employment, defendants owed no duty (and therefore could not have breached their duty) to plaintiffs at that time.  Defendants also posit that plaintiffs cannot allege facts that allow the court to reasonably infer that defendants breached their duty, because defendants were required to notify USCIS that Stem had withdrawn its offer of employment and any other actions taken by defendants would have been futile.

2

"An attorney-client relationship depends on a contract, express or implied, between the parties." *Simpson v. James*, 903 F.2d 372, 376 (5th Cir. 1990).  "When an attorney-client relationship is established, the relation generally terminates once the purpose of the employment is completed, absent a contrary agreement."  *Id.*; *see Sealed Party v. Sealed Party*,  2006 WL 1207732, at *6 (S.D. Tex. May 4, 2006) ("In the absence of an agreement to the contrary, or special circumstances, an attorney-client relationship generally terminates upon the completion of the purpose of the employment.").  "Court[s] look[] to the actions of the parties as a manifestation of their intent concerning the purpose of their attorney-client relationship."  *Gen. Elec. Co. v. Mitsubishi Heavy Indus., Ltd.*, 2011 WL 13201855, at *7 (N.D. Tex. Sept. 12, 2011) (Furgeson, J.).  Once an attorney-client relationship terminates, a legal injury cannot occur because the attorney has no duty to the client at that point.  *See Haase v. Abraham, Watkins, Nichols, Sorrels, Agosto & Friend, LLP*, 404 S.W.3d 75, 89 (Tex. App. 2013, no pet.) ("The date of [defendant's] withdrawal is significant in one respect: it represents the last possible time in which [defendant] could have committed a

wrongful act during the course of the litigation."); *Addicks v. Sickel*, 2005 WL 737419, at *4 (Tex. App. Mar. 31, 2005, no pet.) (mem op.) ("A legal injury cannot occur after the attorney-client relationship has ended because the attorney has no duty to the client at that point.").

3

The court cannot determine at this stage of the litigation whether the purpose of defendants' alleged attorney-client relationships with Hou and Sun was completed on April 2, 2019.  Defendants do not appear to dispute plaintiffs' allegations, and it is at least theoretically possible that, although it was Stem who retained BAL, defendants owed independent duties to Hou and/or Sun related to the H-1B petition.  *See* Austin T. Fragomen, Jr. *et al.*,  H-1B Handbook § 1:51 (2022 ed.) (explaining that although H-1B cases may be pursued without representation of the worker, they may also involve an explicit or implied dual representation of both the employer and the employee).  And the April 2, 2019 email from Stem at most establishes that Hou was told that "any work by Stem's lawyers (BAL) *that would incur additional cost to Stem*" must cease.  Ds. Br., Ex. A at 1 (emphasis added).  But Hou was also told in the email that "Stem will ask BAL to submit the RFE documents they already have in hand shortly before the May 27th deadline.  We hope this provides you with the additional time you need to find alternative employment."  *Id.*  Thus the court cannot conclude, based on this document alone, that BAL's work with respect to Hou's H-1B petition or Sun's change of status application—and the purpose of the alleged attorney-client

relationships—concluded on April 2, 2019.[8]

Moreover, defendants' argument that plaintiffs have failed to allege duty or breach—because any further efforts by defendants regarding the H-1B petition would have been futile—misapprehends the nature of plaintiffs' allegations. Plaintiffs do not allege that defendants breached their duty by notifying USCIS that Stem had withdrawn its offer of employment and withdrawing Hou's H-1B application; instead, they allege that defendants breached their duty by taking these actions and *failing to inform* plaintiffs that USCIS had withdrawn the H-1B petition and denied the change of status application.

## C

## 1

Defendants next maintain that plaintiffs have not alleged facts that enable the court to reasonably infer that defendants proximately caused their damages because plaintiffs never actually accrued time in an unlawful immigration status. Alternatively, assuming that plaintiffs accrued unlawful status, defendants contend that plaintiffs' injuries would have occurred regardless of defendants' omission because their visas were dependent on Stem's offer of employment and that their damages were due to plaintiffs' leaving the United States on a "rush" basis, not defendants' alleged omission. Plaintiffs respond, *inter alia*, that they have plausibly alleged causation because defendants' omission caused them to accumulate time in an unlawful immigration status without their knowledge and this harm was

---

[8]The court takes no position on the merits of this argument with respect to future motions, such as a motion for summary judgment.

foreseeable.

2

"To establish proximate cause, a plaintiff must prove both cause in fact and foreseeability." *Taylor v. Scheef & Stone, LLP*, 2020 WL 4432848, at *4 (N.D. Tex. July 31, 2020) (Fitzwater, J.) (citing *Hall v. Stephenson*, 919 S.W.2d 454, 466 (Tex. App. 1996, pet. denied)). "Cause in fact means that the defendant's act or omission was a substantial factor in bringing about the injury that would not otherwise have occurred." *Id.* (quoting *Hall*, 919 S.W.2d at 466). In other words, the "cause-in-fact standard requires not only that the act or omission be a substantial factor but also that it be a but-for cause of the injury or occurrence." *Rogers*, 518 S.W.3d at 403. "Foreseeability means that the actor should have anticipated the dangers that his negligent act created for others. [It] does not require that the actor anticipate the precise consequences of his actions." *Hall*, 919 S.W.2d at 466 (citation omitted). "These elements cannot be satisfied by mere conjecture, guess, or speculation." *Bd. of Trs. of Fire & Police Retiree Health Fund v. Towers, Perrin, Forster & Crosby, Inc.*, 191 S.W.3d 185, 190 (Tex. App. 2005, no pet.) (quoting *IHS Cedars Treatment Ctr. of Desoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 798-99 (Tex. 2004)).

With respect to legal malpractice claims, "[t]he determination of proximate cause is usually a question of fact." *Off. Stanford Invs. Comm. v. Greenberg Traurig, LLP*, 2014 WL 12572881, at *6 (N.D. Tex. Dec. 17, 2014) (Godbey, J.) (quoting *Millhouse v. Wiesenthal*, 775 S.W.2d 626, 627 (Tex. 1989)). "Nonetheless, causation may be determined as a matter of law if the circumstances are such that reasonable minds could not arrive at a different

conclusion." *Id.* (quoting *Mackie v. McKenzie*, 900 S.W.2d 445, 449 (Tex. App. 1995, writ denied)).

3

The court concludes that defendants' argument that plaintiffs never accrued unlawful presence, and were thus incorrectly advised by Amazon's counsel that they were out of status for over 180 days, is a factual question that must be decided in a procedural context that is not confined to an evaluation of plaintiffs' complaint, such as a summary judgment motion. For the purposes of this Rule 12(b)(6) motion, the court must accept as true plaintiffs' allegation that they accrued over 180 days of unlawful presence in the United States. *See, e.g.*, *Bramlett v. Med. Protective Co. of Fort Wayne, Ind.*, 855 F.Supp.2d 615, 618 (N.D. Tex. 2012) (Fitzwater, C.J.).

The court also rejects defendants' arguments that plaintiffs have failed to adequately plead causation: because plaintiffs would have accrued this unlawful presence regardless of any omissions by defendants, and, once they accrued 180 days of unlawful status, plaintiffs did not need to expedite their departure from the United States. These arguments again misapprehend the nature of the allegations in plaintiffs' complaint. Plaintiffs do not allege that defendants caused their damages by informing USCIS that Stem's offer of employment had been rescinded or by withdrawing the H-1B petition; rather, they allege that defendants caused their damages by *failing to inform* plaintiffs when USCIS withdrew Hou's H-1B petition and denied Sun's accompanying application for change of status. Plaintiffs allege that defendants' omission led them to unknowingly accrue more than 180 days of unlawful

presence in the United States and deprived them of the opportunity to leave the United States before they accrued this period of unlawful presence. Plaintiffs have plausibly pleaded that defendants' failure to inform plaintiffs of USCIS's decisions proximately caused them to unknowingly accrue over 180 days of unlawful presence in the United States, which caused the denial of Hou's subsequent change of status application and required them to leave the United States.

Plaintiffs' complaint alleges sufficient facts to plausibly plead a claim that defendants' failure to notify plaintiffs of USCIS's May 2, 2019 decisions constituted a breach of their duties as attorneys and proximately caused plaintiffs' damages. The court therefore holds that plaintiffs have stated a claim for legal malpractice, and it denies defendants' motion to dismiss in this respect.

V

The court now turns to defendants' contention that plaintiffs' claim for breach of fiduciary duty violates the Texas anti-fracturing rule.

A

"Under Texas law, . . . '[w]hether allegations against a lawyer, labeled as breach of fiduciary duty, fraud, or some other cause of action, are actually claims for professional negligence or something else is a question of law to be determined by the court." *Huerta v. Shein*, 498 Fed. Appx. 422, 427 (5th Cir. 2012) (per curiam) (alteration in original) (quoting *Nabors v. McColl*, 2010 WL 255968, at *2 (Tex. App. Jan. 25, 2010, pet. denied) (mem. op.)). Texas courts apply "[t]he anti-fracturing rule [to] prevent[ ] plaintiffs from converting

- 15 -

what are actually professional negligence claims against an attorney into other claims such as fraud, breach of contract, [or] breach of fiduciary duty . . . ."  *Won Pak v. Harris*, 313 S.W.3d 454, 457 (Tex. App. 2010, pet. denied).  Although the anti-fracturing rule "does not necessarily foreclose the simultaneous pursuit of a negligence-based malpractice claim and a separate breach of fiduciary duty or fraud claim when there is a viable basis for doing so[,]" the plaintiffs "must do more than merely reassert the same claim for legal malpractice under an alternative label." *Huerta*, 498 Fed. Appx. at 427 (first quoting *Meullion v. Gladden*, 2011 WL 5926676, at \*4 (Tex. App. Nov. 29, 2011, no pet.) (mem. op.); then quoting *Duerr v. Brown*, 262 S.W.3d 63, 70 (Tex. App. 2008, no pet.)).  They "must present a claim that goes beyond what traditionally has been characterized as legal malpractice." *Id.* (quoting *Duerr*, 262 S.W.3d at 70).  "In other words, 'the pleaded facts [viewed] . . . in the light most favorable to [plaintiffs]' must demonstrate that the 'precise character of [their] [additional] claims' cannot be reduced to mere negligence." *Taylor*, 2020 WL 4432848, at \*7 (quoting *Huerta*, 498 Fed. Appx. at 428) (first and final alteration in original).

B

The court holds that plaintiffs' claim for breach of fiduciary duty violates the Texas anti-fracturing rule.  This is because plaintiffs rely on the same factual allegations that support their legal malpractice claim to support their breach of fiduciary duty claim. And plaintiffs allege that defendants breached their fiduciary duty to plaintiffs because "BAL and [Villasenor-Sanchez] failed to use ordinary care in [their] representation of Sun[,]" and because their omission breached their "duty to exercise reasonable care in the representation

- 16 -

of both plaintiffs." Compl. ¶¶ 23-26. Because both of plaintiffs' claims are based on the same conduct and the gravamen of both claims is that defendants did not represent them with the degree of care, skill, or diligence as attorneys of ordinary skill and knowledge commonly possess, plaintiffs' breach of fiduciary duty claim is improperly "fractured" from their legal malpractice claim. *See In re Cyr*, 2020 WL 10731249, at *4 (W.D. Tex. June 8, 2020) (granting motion to dismiss breach of fiduciary duty claim because "Plaintiff's breach of fiduciary duty claim is based on the same alleged conduct as his asserted legal malpractice claim and the substance of the claims is indistinguishable"); *Deutsch v. Hoover, Bax & Slovacek, L.L.P*, 97 S.W.3d 179, 189 (Tex. App. 2002, no pet.) ("If the gist of a client's complaint is that the attorney did not exercise that degree of care, skill, or diligence as attorneys of ordinary skill and knowledge commonly possess, then that complaint should be pursued as a negligence claim, rather than some other claim."); *see also Duerr*, 262 S.W.3d at 71 ("A legal malpractice claim focuses on whether an attorney represented a client with the requisite level of skill, while a breach of fiduciary duty claim encompasses whether an attorney obtained an improper benefit from the representation.").

The court therefore grants defendants' motion to dismiss plaintiffs' breach of fiduciary duty claim.

VI

The court grants plaintiffs leave to replead. The court's usual practice when granting a motion to dismiss is to permit the plaintiffs at least one opportunity to replead, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling

or unable to amend in a manner that will avoid dismissal. *See In re Am. Airlines, Inc., Privacy Litig.*, 370 F.Supp.2d 552, 567-68 (N.D. Tex. 2005) (Fitzwater, J.) ("[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal." (citation omitted)). Furthermore, in granting leave to replead, the court takes into consideration that plaintiffs are proceeding *pro se*. *See, e.g.*, *Smallwood v. Bank of Am.*, 2012 WL 32654, at *5 (N.D. Tex. Jan. 6, 2012) (Fitzwater, C.J.) (granting leave to file third amended complaint because plaintiffs were proceeding *pro se*).

\*    \*    \*

For the reasons explained, the court grants in part and denies in part defendants' motion to dismiss. The court grants plaintiffs 28 days from the date this memorandum opinion and order is filed to file a second amended complaint.[9]

---

[9]For clarity, the court will require that plaintiffs entitle this pleading a second amended complaint. On February 2, 2022 plaintiffs filed a pleading entitled "Amended Claim," but this was done to comply with the court's January 18, 2022 order requiring that plaintiffs properly plead diversity jurisdiction; plaintiffs did not in this filing amend their claims against defendants. But although plaintiffs have not yet filed a first amended complaint, it may be confusing to refer to their forthcoming amended complaint by that title given the filing of the "Amended Claim." The court thus directs that plaintiffs entitle their forthcoming pleading as a second amended complaint.

**SO ORDERED**.

June 23, 2022.

SIDNEY A. FITZWATER
SENIOR JUDGE