**HUA HOU**
**LUQIN SUN**
18-604  Wei Chen Yue Cheng
Lin'an, Hangzhou, Zhejiang, China
Telephone: +001 5102055984
Email: hhou2011@outlook.com

**IN THE DISTRICT COURT OF NORTHERN DISTRICT OF TEXAS**
**IN AND FOR THE COUNTY OF DALLAS**

| | |
|---|---|
| HUA HOU | Case No.:  3:21-cv-02958-D |
| LUQIN SUN | |
| Plaintiff, | PLEADING TITLE |
| vs. | |
| BERRY APPLEMAN & LEIDEN LLP | |
| CLAUDIA VILLASEÑOR-SANCHEZ | |
| Defendant | |

PLAINTIFFS' MEMORANDUM IN DISMISSAL OF MOTION FOR

SUMMARY JUDGMENT

Plaintiffs, Hou and Sun submit the Memorandum in support of their dismissal of the

motion for SUMMARY JUDGMENT in favor of defendants state as follows:

## I.      SUMMARY OF THE ARGUMENT

**Expert Testimony Requirement:** The Plaintiffs argue that expert testimony is not

necessary in this case, as the facts are straightforward and comprehensible even to a

layperson. The legal precedents cited by the Defendants in support of the need for expert

testimony primarily pertain to medical malpractice cases and do not apply directly to their

situation. In addition, the lack of skill or care in this case is evident and does not require

expert interpretation.

**Causation and Damages:** The Plaintiffs dispute the Defendants' claim that they

would have suffered the same harm even if timely informed of their immigration status. The

Plaintiffs present alternative options that would have prevented the alleged damages, such as returning to their home country and re-entering the United States. The Plaintiffs also provide evidence of their violation of immigration laws, contradicting the Defendants' assertion of insufficient evidence.

**Attorney-Client Relationship:** The Plaintiffs contest the termination of the attorney-client relationship, arguing that the Defendants' duty extended beyond the submission of documents. They highlight the Defendants' continued engagement in collecting pertinent documents and the necessity of providing information about the withdrawal of petitions to avoid harm. They also question the termination date cited by the Defendants, pointing to the ongoing representation postulated by the Defendants themselves.

## II. ARGUMENTS

### 1. *Expert Testimony is not necessary due to the straightforward facts*

The Defendants cite the Scheduling Order from June 2, 2022, which imposes a deadline for the designation of expert witnesses in this case. However, it is important to emphasize that this deadline pertains to cases where a party has the burden of proof on a specific claim or defense. The Scheduling Order expressly states that all deadlines must be met, but it allows for modifications upon showing good cause as required by Rule 16(b).

Medical malpractice cases often require expert testimony to establish the standard of care. This involves demonstrating the level of skill and care that a reasonably competent medical professional in the same field would have provided under similar circumstances.

The Defendants insist that without expert witnesses to opine on the standard of care applicable to their representation and whether their alleged conduct breached that standard, the Complaint is destined to fail. They base their assertion on the requirement in Texas legal malpractice claims, as laid out in *Cantu, 195 S.W. at 873; citing, Alexander v. Turtur & Assocs., 146 S.W.3d 113, 119-20 (Tex. 1995); Ersek v. Davis & Davis, P.C., 69 S.W.3d 268, 271 (Tex. App.-Austin 2002, pet. Denied),*(Doc. 36 at P9) which necessitates expert testimony to establish causation and the applicable standard of care exercised by an attorney.

However, these cases are all related to medical injury even though they look like legal malpractice. Cantu and Cortez's legal malpractice claim required expert testimony to show that Horany breached the standard of care when he failed to sue all of the responsible medical and nursing providers and that they would have prevailed in the underlying medical malpractice suit against some of the responsible medical and nursing providers had the suit been brought. In Alexander Vs. Turtur &Assocs., 146 S.W. 3d113, The principal issue in this legal malpractice case is whether the jury needed expert testimony to determine whether the client would have prevailed in an underlying trial but for its attorneys' alleged negligence in preparing and trying the case. Ersek sued Davis & Davis by filing his petition on November 12, 1999, alleging: legal malpractice based on the firm's negligent representation of him in a medical malpractice action;

However, not all legal malpractice cases require expert testimony. In some straightforward cases where the attorney's error or negligence is readily apparent to a layperson, expert testimony may not be necessary. "It should be noted that there is an exception to that rule in cases where the nature of the case is such that the lack of skill or care

of the physician and surgeon is so apparent as to be within the comprehension of laymen and requires only common knowledge and experience to understand and judge it, and in such case, expert testimony is not necessary." See Hubach v. Cole (1938), 133 Ohio St. 137, Bruni, 346 N.E.2d at 677 and, generally, Morgan v. Sheppard (1963), 91 Ohio Law Abs. 579.

The Defendants argue that the case presented is not one that falls within the common understanding of a lay juror. Rather, it involves a complex set of facts, where the Plaintiffs' immigration status hinges on specific conditions, including a qualified job offer and compliance with the H-1B petition process. In essence, the Defendants contend that the absence of a qualified legal expert's testimony is detrimental to the Plaintiffs' case, as it affects their ability to establish breach and causation at trial. Moreover, they argue that the Plaintiffs' alleged failure to timely designate such an expert is grounds for summary judgment in the Defendants' favor. However, this assertion is disputable given the straightforward nature of the evidence presented. Even a layperson can comprehend that when an attorney receives a crucial document intended for their client, it is their responsibility to promptly relay the information. In this particular instance, the document in question is not ordinary; it is the outcome that initiated the petition process and constitutes the very purpose for which the attorney was engaged.

While the Defendants argue that a lay juror requires a qualified legal expert to assess the conduct of a reasonably prudent attorney in handling the Plaintiffs' situation, it is essential to clarify that the expectation was not for the Defendants BAL to manage the Plaintiffs' situation comprehensively. The Plaintiffs simply anticipated the timely

communication of vital information that rightfully belonged to them, specifically the decision notice from USCIS. The time sensitivity of this decision is evident from its explicit warning " Notice of Decision may leave you without lawful immigration status and you may be present in the United States in violation of the law."

The Defendants' position hinges on the assertion that the case involves complexities beyond the grasp of a layperson. However, considering the straightforward facts and the clear expectations regarding the communication of critical information, the requirement for expert testimony appears unnecessary. As previously established in cases such as Hubach v. Cole (1938), 133 Ohio St. 137, Bruni, 346 N.E.2d at 677, and Morgan v. Sheppard (1963), 91 Ohio Law Abs. 579, the exception to the rule requiring expert testimony applies when the lack of skill or care is so apparent that it can be comprehended by a layperson using common knowledge and experience. In this instance, the lack of timely communication is within the realm of common understanding and does not necessitate expert testimony.

### 2. *The breach of duty proximately caused the Plaintiffs' damage*

In accordance with the assertion made by the Defendants BAL, "Hence, even in the event the Defendants had timely apprised the Plaintiffs of the USCIS documents dated May 2, 2019, the Plaintiffs would still have suffered the alleged harm," (Doc 36, P13 Line 10) it is incumbent upon this argument to address the inaccuracies in the aforementioned statement.

Should the Plaintiffs have been made aware of the expiration of their valid visas on May 2nd, 2019, they would have possessed alternative courses of action. Specifically,

Plaintiff Hou received a formal offer of employment from Amazon on October 18th, 2019, a date that significantly precedes the culmination of 180 days (November 2nd, 2019). This temporal distinction is of paramount importance, as it affords the Plaintiffs the opportunity to return to their home country, China, and subsequently re-enter the United States, thereby averting the imposition of the 180-day penalty.

Second, Pursuant to the statement provided by the Defendants, asserting that "Apart from the contentions put forth by the Plaintiffs, there exists no corroborative factual evidence indicating that the Plaintiffs did, in fact, accumulate a period of 180 days of unlawful presence, nor that their subsequent re-entry was effectively prohibited for a duration exceeding three years,"(Doc 36, P13 Line 19)  it is imperative to address the inaccuracies embedded within this claim.

The Decision issued by the United States Citizenship and Immigration Services (USCIS) explicitly denotes that

**WARNING CONCERNING UNLAWFUL PRESENCE**

Please be aware that, under section 212(a)(9)(B) of the Immigration and Nationality Act (INA), an alien who accrues more than 180 days of unlawful presence in the United States, and then departs, is inadmissible to the United States for a period of either three years or ten years.

You may remain in your current nonimmigrant status until the expiration date indicated on your Form I-94, Arrival-Departure Record. However, if the date listed on your Form I-94 has already passed, this Notice of Decision may leave you without lawful immigration status and you may be present in the United States in violation of the law.

As per the specifics outlined in the decision, the expiration of Plaintiffs' valid visa status occurred on May 2nd, 2019, subsequently prompting Plaintiffs' departure from

China on January 3rd, 2020, a period exceeding 180 days. Consequently, Plaintiffs were, in fact, in violation of immigration laws, rendering the presence of additional substantiating evidence redundant.

Analogous to the analogy posited by the Defendants, the commission of an offense absent apprehension does not preclude the classification of one as an offender. Similarly, the Defendants cannot assert the absence of evidence due to the Plaintiffs' failure to prevent their re-entry, as such a course of action was foreseen by the Plaintiffs.

Referring to Document 36, Paragraph 11, Line 7, the Defendants allege that "The Plaintiffs now assert that the Defendants breached the standard of care by neglecting to inform them of information they were already aware of: the submissions made to the USCIS would not yield a change in the Plaintiffs' immigration status due to the absence of a requisite job offer for Hou." However, it is evident that this notion has been appropriated by the Defendants. It was imperative for Plaintiffs to ascertain the precise timeframe concerning the expiration of Plaintiffs' visa and the ensuing penalties. Additionally, in Line 11, the Defendants assert that "The USCIS's documents dated May 2, 2019, merely validated the information already communicated to the Plaintiffs on April 2, 2019: that their petitions could not prosper due to Hou's lack of a suitable job offer." This assertion is erroneous as it does not acknowledge the uncertainty surrounding whether the Defendants transmitted the withdrawal notice to the USCIS. Despite any potential communication, Plaintiffs operated under the belief that the documents prepared by the Defendants would be submitted to the USCIS by May 27th 2019, a fact corroborated by STEM's manager, Erik.

### 3. *The defendants owed the plaintiff a duty and the attorney-client relationship is not terminated until they finally release the Decision to the Plaintiffs.*

In the pleading documented as No. 36, Defendant BAL asserts that the cessation of Defendant's duty occurred prior to the alleged breaches. Their statement on Page 14, Line 16 alludes to the principle that "an attorney-client relationship generally concludes upon the fulfillment of the employment's purpose," referencing Simpson v. James, 903 F.2d 372, 376 (5th Cir. 1990), and Dillard v. Broyles, 633 S.W.2d 636, 643 (Tex. App.-Corpus Christi 1982, writ ref'd n.r.e.). However, there appears to be a misunderstanding on the part of the Defendants regarding the concept of "completion," which inherently implies the fulfillment of the task initiated. The assertion that the job merely encompassed the submission of Stem's H-1B Petition to the USCIS on behalf of Plaintiff Hou, alongside applications seeking to alter the Plaintiffs' non-immigrant status, does not reflect the entirety of the legal obligations involved.

The argument posited by the Defendants neglects the comprehensive nature of the task at hand. Notably, during the USCIS's notice for Request for Evidence (RFE), the Defendants actively engaged in the collection of all pertinent documents, signifying a more involved responsibility than just the submission of the initial petition. Therefore, the purpose of the employment encompassed the procurement of the H1B petition, necessitating the Plaintiffs' right to be informed if the Defendants withdrew the petition, ultimately leading to the failure of Hou's H1B petition. Similarly, for Plaintiff Sun, the objective was to seek a change of her status from F1 to H4, demanding the transmission of the decision from the USCIS to fulfil this purpose. Consequently, the termination of the attorney-client relationship

did not occur until the Defendants finally delivered the Decision to the Plaintiffs on November 26, 2019.

Furthermore, the Defendants' claim that the attorney-client relationship terminated no later than April 2, 2019, due to Stem's retraction of its job offer (Document 36, Page 15, Line 9) is incongruous with their subsequent actions. The continued submission of the withdrawal request on behalf of Plaintiffs Sun and Hou post this purported termination raises concerns regarding potential legal violations by the Defendants, particularly with respect to Plaintiff Sun, who authorized Defendants BAL's representation through the signing of the G28.

### III.    CONCLUSION

In conclusion, the Plaintiffs have effectively argued against the necessity of expert testimony, emphasizing the straightforward nature of the facts and their comprehensibility to a layperson. The Plaintiffs have also provided concrete evidence to refute the Defendants' claim that the alleged harm would have occurred regardless of the Defendants' actions. The Plaintiffs' arguments regarding the ongoing duty owed by the Defendants and the sustained attorney-client relationship until the final release of the Decision serve to challenge the Defendants' assertion of an early termination of their obligations.

Moreover, the Plaintiffs have convincingly pointed out the discrepancies in the Defendants' interpretation of legal precedents, effectively highlighting the unique circumstances of their case. By underscoring the crucial aspects of the timeline and communication of vital information, the Plaintiffs have successfully demonstrated the

Defendants' failure to meet their professional responsibilities, resulting in the alleged damages.

WHEREFORE, Plaintiffs Hou and Sun respectfully request this court enter an ORDER: 1) Dismissal of the Defendants' Motion for Summary Judgment regarding the dismissal of the Plaintiffs' Complaint. 2) Granting of Summary Judgment in favor of the Plaintiffs' side.

Respectfully submitted,

HUA HOU and LUQIN SUN
18-604 Wei Chen Yue Cheng
Lin'an District, Hangzhou
Zhejiang Province, China
3100

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document was forwarded to Defendants via electronic service in accordance with the Federal Rules of Civil Procedure, on the 22nd day of October, 2023 via the e-filing system.

HUA HOU and LUQIN SUN