**HUA HOU**
**LUQIN SUN**
18-604  Wei Chen Yue Cheng
Lin'an, Hangzhou, Zhejiang, China
Telephone: +001 5102055984
Email: hhou2011@outlook.com

# IN THE DISTRICT COURT OF NORTHERN DISTRICT OF TEXAS
## IN AND FOR THE COUNTY OF DALLAS

| | |
|---|---|
| HUA HOU | Case No.:  3:21-cv-02958-D |
| LUQIN SUN | |
| Plaintiff,<br>vs.<br>BERRY APPLEMAN & LEIDEN LLP<br>CLAUDIA VILLASEÑOR-SANCHEZ<br>Defendant | PLEADING TITLE |

PLAINTIFFS's Response to Defendants' reply in support  OF MOTION FOR

SUMMARY JUDGMENT

Plaintiffs, Hou and Sun submit the response to the defendant's reply in support of their

of motion for SUMMARY JUDGMENT in favor of defendants state as follows:

## I.      SUMMARY OF THE ARGUMENT

**The "common knowledge" exception is applicable:** The Plaintiffs contend that

expert testimony is unnecessary in this instance, given the straightforward nature of the facts,

allowing for the application of the "common knowledge" exception.

**The Plaintiffs present compelling evidence of their accrual of unlawful presence:**

They challenge the Defendants' assertion that evidence of unlawful presence was not

provided. BAL's malpractice eliminated all other viable options that could have prevented the

alleged damages to the Plaintiff.

**The Attorney-Client Relationship persisted until all decisions from authorities were disclosed to the Plaintiffs:** The Plaintiffs argue that the Defendants' obligation extended beyond document submission. The attorney-client relationship encompasses a broader timeframe than the transactional process of opening and closing a petition.

**ARGUMENTS**

1. <u>**The common knowledge exception applies due to the straightforward facts:**</u>

The common knowledge exception to the requirement for expert testimony regarding breach and proximate cause in legal malpractice cases is evident in this scenario.

Firstly, the attorney-client relationship between BAL and the Plaintiffs has a distinct timeframe. It commenced prior to submitting the petitions and extended beyond its closure. Before formally filing the petition, the attorney was actively involved in preparing documents for the Plaintiffs. Plaintiffs also were granted to access the portal of BAL's case-management system and were required to upload the visa documents via this portal or download the forms or notices from USCIS timely. The discovery request on the Defendants activity for the Plaintiff's case would reveal when BAL decided to grant Plaintiffs to access BAL's client-case management system and when the permission was disabled. Consequently, the attorney had the obligation to inform the Plaintiff once USCIS made its final decision. This relationship encompassed a broader duration than the opening and closing of the petitions.

Secondly, inside the United States, USCIS stands as the sole authority in deciding the immigration petition without involvement from any other entity. USCIS's role can be

comprehended by a layperson and supports the Plaintiffs' position. In this case, the Defendants represented the Plaintiffs' legal matters since the initial petition received by USCIS on November 19, 2018 (Refer to Doc 26 p.14 to p.16 or attached discovery Exhibit 17 and 18). Although the Defendants initiated this representation, they did not conclude it within the appropriate timeframe. Notices regarding Requests for Evidence (RFE) and their due dates from USCIS were regularly forwarded to the Plaintiff by the Defendants initially (see Doc 26 p.18 or Exhibit 2). However, subsequent notices or documents from USCIS were withheld by the Defendants without timely disclosure (Refer to Doc 26 p.24 to p.25 or Exhibit 7, 8, 9, and 10). Despite USCIS warning about the date and risk of unlawful presence, the Defendants ignored this warning and failed to inform the Plaintiff. This case represents a failure in responsibly complete representation on the petition by disclosing the final notice from USCIS, citing INA 212((a)(9)(B) concerning unlawful presence.

(1) USCIS made the decision on the Plaintiffs' change of status on May 2nd, 2019 (See Doc 26 p.28 to P.30 or Exhibit 11, 12), but BAL withheld the release of the notice until Nov 26, 2019 (See Doc 26 p.25 or Exhibit 7, 8, 9 and 10), surpassing the 180-day limit. The calculation between these dates is straightforward, even understandable to a layperson, regarding the impact and damage incurred. (2) Considering the Plaintiff had already accrued 180 days, the logical understanding for a layperson would be to mitigate further by leaving the US immediately to avoid a longer bar of inadmissibility. (3) Proper conduct from Defendant would have allowed Plaintiffs to legally remain in the US by applying for a change of status to another visa or leaving the US promptly and re-entering later without violating immigration laws.

The defendant argued that the Plaintiffs knew any reasonably anticipated immigration status was not viable without a foundational job offer. This logic is flawed. The absence of a job offer doesn't signify the end for the Plaintiff. They were on a student visa before applying for the change of status; a work visa was just one of the potential valid immigration visas they could pursue. What mattered to the Plaintiffs was the decision date from USCIS. Timely information would have enabled them to take appropriate action to avoid violating immigration laws referred to in the citation of the decision notice. The Defendant breached the attorney-client relationship by failing to disclose time-sensitive information. BAL, as the firm representing the Plaintiffs and withholding the notice, cannot evade responsibility for clarifying their actions in closing the petition and terminating representation by disclosing the notice promptly.

2. **<u>The Plaintiff has presented compelling evidence regarding the actual accrual of unlawful presence:</u>**

The response explicitly identifies the evidence confirming that the Plaintiffs indeed accrued 180 days of unlawful presence.

At the time BAL submitted the change of status for the Plaintiffs, they were still within valid immigration status. Plaintiff Sun held her student visa status (Refer to Doc 26 p.46 or Exhibit 21). Plaintiff Hou, as Sun's dependent, had a similar visa duration under a student dependency visa (See Exhibit 22). The I797 notice clearly indicates that Hou's visa status aligns with the principal visa holder's status – being valid during principal study. The expiration dates of their immigration statuses before the application are distinctly marked in the approved notices for visa status extensions (Refer to Doc 26 p.46 or Exhibit 21, 22).

However, before USCIS reached a final decision on the petition, the Plaintiffs' visa statuses had already expired after January 31, 2019. The legal status of the Plaintiffs after the expiration date depended not only on the date of USCIS's decision made, but also on how the Plaintiffs would respond upon receiving this notice.

In the immigration case for the change of status, the Decision issued by USCIS referenced INA 212((a)(9)(B), concerning unlawful presence. The USCIS notice used conditional language ("If and May") in the warning section because it only specified the notice date of this decision. USCIS couldn't predict the Plaintiff's subsequent actions upon receiving this notice. If the Plaintiff took no action upon awareness of this notice, they would immediately fall into unlawful presence. However, if the Plaintiff filed a new petition to change their visa status or left the US promptly, this notice wouldn't lead to unlawful presence. Regrettably, BAL not only withheld the disclosure of the USCIS decision from the Plaintiffs upon receipt on May 2nd, 2019 (See Doc 26 p.28, 29, 30 or Exhibit 7, 8, 9, 10 ) but also delayed disclosing it in a timely manner. Consequently, all potential actions the Plaintiffs could have taken upon receiving this notice to maintain legal status were eliminated. The USCIS decision became deterministic and immediately triggered the start of the Plaintiff's count of unlawful presence since May 2nd, 2019. Without knowledge of the decision date, the Plaintiff couldn't ascertain their unlawful presence status or the duration they had accrued. Clearly, the failure to disclose information by the Defendants had a significant impact and inflicted damage on the Plaintiffs after the notice date.

When the Plaintiffs finally became aware of the decision notice on Nov 26, 2019, a period exceeding 180 days had passed. Consequently, the Plaintiffs were indeed in violation of immigration laws, rendering additional substantiating evidence unnecessary.

Therefore, the Plaintiff's claim of unlawful presence exceeding 180 days is strongly supported by a well-constructed chain of evidences.

3. ***The Plaintiffs strongly refute the Defendants' claim that their duties ceased before the alleged malpractice with robust evidence:***

In their reply documented as No. 42, Defendant BAL contends that the Plaintiffs' rebuttal regarding the Defendants' duties lacks evidence. However, Defendant appears to have overlooked the comprehensive chain of evidence outlined in the complaint and discovery documents.

In any immigration petition, the open-close transaction is delineated by the case's initiation and closure dates. The case's commencement is marked by the initial application's receipt by the petitioner (refer to Doc 26 p.14 to p.16 or Exhibit 17, 18), while closure occurs upon receipt of decision notices from USCIS (refer to Doc 26 p.28 to p.30 or Exhibit 11, 12).

Defendants attempt to blur the duty timeline between the STEM notice date and USCIS's decision date. The STEM notice date merely indicated that STEM would not pursue the SUCCESS for the Plaintiffs' petition but would instruct BAL to CLOSE these petition cases on the Plaintiffs' behalf while responding to RFEs. BAL did not halt their actions on April 2nd, 2019; instead, they admitted to further action on November 26, 2019, to close the H1b petition. The final closure of both Plaintiff Hou's H1b application and Plaintiff Sun's H4 petition was not determined by BAL or

STEM but by the legal authority, USCIS. The case applications could only be conclusively closed when USCIS made the final decision, and the attorney-client relationship could only terminate upon BAL informing the decision's content to Plaintiffs in due time. This representing relationship spans a broader timeframe than the petition's open-close transaction, commencing during petition preparation and ending with the delivery of final legal notices to the client. Evidence of the case's closure as defined by USCIS is May 2nd, 2019 (refer to Doc 26 p.28-p.30 or attached Exhibit 11, 12). The evidence of relationship termination is the disclosure notice on November 26, 2019.

Due to the commitment made by STEM to close the petition by responding to USCIS with RFE documents, ambiguity arose regarding how BAL would close the H1b petition (refer to Doc 26 p.19 or Exhibit 3) before USCIS's decision. BAL had the opportunity to clarify this ambiguity when the Plaintiff repeatedly inquired (refer to query emails in Doc p.20 to p.22 or attached Exhibit 4, 5, 6). When BAL was informed not to pursue petition success, they immediately severed the information flow chain from USCIS to the Plaintiffs. BAL neither clarified how they responded to USCIS to close the cases nor forwarded the decision to the Plaintiffs to terminate the attorney-client relationship. Consequently, by failing to inform the Plaintiffs if they had responded to USCIS when ambiguity existed on how to close the H1b petition, the Plaintiffs were ultimately unable to stay informed about their visa status.

Regarding Plaintiff Sun's status change from F1 to H4, USCIS's decision transmission was crucial for this purpose. Plaintiff Sun authorized Defendants BAL's representation through the signing of the G28. The initial receipt notice from USCIS

(refer to the receipt notice in Doc 26 p.16 or attached Exhibit 17, 18) and the final decision notice from USCIS unequivocally defined the relationship (refer to Doc p.28 – p.30 or attached Exhibit 11, 12). Based on the representation relationship demonstrated in the initial petition on October 18, 2019 (refer to Doc p.16 or Exhibit 17, 18), the USCIS decision letter for Sun's petition was consequently mailed to BAL's communication address, not the plaintiff's mailing address. This distinctly indicated that USCIS expected the attorney to inform the Plaintiffs about the notice since the petition's initiation (refer to receipt notice in Doc p.16 or Exhibit 17, 18) already framed the attorney-client relationship. BAL, as the attorney, had the responsibility to disclose any notice from USCIS, just as they did when pursuing the petition. Consequently, the termination of the attorney-client relationship did not occur until the Defendants finally disclosed the Decision to the Plaintiffs on November 26, 2019 (refer to Doc p.23 to 26 or attached Exhibit 7, 8, 9, 10).

## II.    CONCLUSION

In summary, the Plaintiffs have successfully argued for the application of the "common knowledge" exception in this case, supported by a well-constructed evidence chain demonstrating their unlawful presence exceeding 180 days. Moreover, the Plaintiffs have effectively refuted the Defendants' claim that their duties ceased before the alleged malpractice.

Therefore, the Plaintiffs, Hou and Sun, respectfully request this court to:

Dismiss the Defendants' Motion for Summary Judgment regarding the dismissal of the

Plaintiffs' Complaint.

Or Grant Summary Judgment in favor of the Plaintiffs' side.

Respectfully submitted,

HUA HOU and LUQIN SUN
18-604 Wei Chen Yue Cheng
Lin'an District, Hangzhou
Zhejiang Province, China

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document was

forwarded to Defendants via electronic service in accordance with the Federal Rules of Civil

Procedure, on the November 21, 2023 via the e-filing system.

HUA HOU and LUQIN SUN
18-604 Wei Chen Yue Cheng
Lin'an District, Hangzhou
Zhejiang Province, China